Physicians Mutual Insurance Company, Appellant, *v.* Herbert S. Denenberg, Insurance Commissioner of the Commonwealth of Pennsylvania, Appellee.

510

Argued September 6, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., ROGERS and BLATT. Judge MENCER did not participate.

*Robert J. Demer,* with him *Thomas R. Balaban* and *Shaffer, Calkins & Balaban,* for appellant.

*Andrew F. Giffin,* Assistant Attorney General, with him *Barton Isenberg,* Assistant Attorney General, and *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., November 1, 1974:

Physicians Mutual Insurance Company (Appellant), a Nebraska company, which holds a certificate of authority to do business in Pennsylvania, filed copies of seven insurance policy forms with the Pennsylvania Insurance Department (Department) during the years 1969 through 1971. All of the forms and the accompanying rates of premiums charged were approved for issue and sale in Pennsylvania.[1] Following the respective dates of approval, Appellant issued and sold the policies in the Commonwealth at the premium rates which had been filed. Each of these policies provided for an initial premium of one dollar ($1.00) for the first month of coverage, regardless of the type of risk insured.

On September 13, 1973, Appellant received a letter from an employe of the Department dated September 7, 1973, wherein it was notified that approval of the seven policies was withdrawn on the authority of Section 354 of the Insurance Company Law of 1921, Act of May 17, 1921, P. L. 682, *as amended*, 40 P.S. §477b. The stated reasons for withdrawal of approval were: (1) nominal initial premium is discriminatory, (2) application of the nominal initial premium is not in accord with actuarial principles acceptable to the Department. Subsequently Appellant received a letter from an employe of the Department which purported to amend the September 7, 1973 letter citing Section 353, 40 P.S. §477a; Section 354, 40 P.S. §477b; Section 616, 40 P.S.

---

[1] The policy forms in question and their respective dates of approval by the Department are as follows:

| Form P328A | approved | 7/22/71 |
| Form P326A | approved | 1/26/70 |
| Form P325A | approved | 1/19/70 |
| Form P324B | approved | 1/19/70 |
| Form P323E | approved | 10/14/69 |
| Form P322P | approved | 3/ 4/69 |
| Form P320A | approved | 2/10/69 |

§751; Section 626, 40 P.S. §761 "and other applicable sections" as justification for the withdrawal. Then came a series of procedural joustings which are unimportant in resolving the issues and uninteresting to the legal scholar. Before us now for consideration is an appeal from the adjudication of the Insurance Commissioner affirming the revocation of approval of Appellant's forms.

Initially, Appellant argues that the Insurance Commissioner had no authority under Section 354, 40 P.S. §477b to withdraw approval of policy forms which had been approved previously. Section 354 provides in relevant part:

"It shall be unlawful for any insurance company . . . doing business in this Commonwealth, to issue, sell, or dispose of any policy, contract or certificate, covering life, health, accident, personal liability, fire, marine, title, and all forms of casualty insurance, or contracts pertaining to pure endowments or annuities, or any other contracts of insurance . . . until the forms of the same have been submitted it and formally approved by the Insurance Commissioner, and copies filed in the Insurance Department . . . .

"Such approval shall become void upon any subsequent notice of disapproval from the Insurance Commissioner, or upon any subsequent withdrawal of license or refusal of the Insurance Commissioner to relicense any such company . . . .

"Upon any disapproval, the Insurance Commissioner shall notify the insurer in writing, specifying the reason for such disapproval; and within thirty (30) days from the date of mailing of such notice to the insurer, such insurer may make written application to the Insurance Commissioner for a hearing thereon, and such hearing shall be held within thirty (30) days after receipt of such application. The procedure before the Insurance Commissioner shall be in accordance with

the adjudication procedure set forth in the 'Administrative Agency Law,' and the insurer shall be entitled to the judicial review as provided for in said law."

This argument is without merit. The first paragraph of Section 354 applies where the insurance company is seeking initial approval of the policy form. But, clearly the second and third paragraphs cited are addressed to the situation where the Commissioner would have some reason to disapprove. The language "such approval shall become void upon any subsequent notice of disapproval . . . or any subsequent withdrawal of license or refusal of the Insurance Commissioner to re-license . . ." is a declaration by the Legislature that the Commissioner can and should reexamine companies which do business within the Commonwealth. The Legislature clearly intended the Commissioner to have the power to disapprove, with cause, a form which had been approved previously. It is unlikely that the Legislature would tie the hands of the Commissioner so as to prohibit his later disapproval of forms when circumstances change, or where in his judgment approval of the original was improvidently given. As stated in the Statutory Construction Act of 1972, 1 Pa. S. 1922: "[i]n ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used: (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." We find it to be unreasonable to so limit the Commissioner.

Assuming that the Commissioner has the authority to void the approval of the initially approved form, what authority is there to base disapproval on the classification of the risk and premium rates? Section 616, 40 P.S. §751 provides: "No policy of insurance against loss from sickness, or loss or damage from bodily injury or death of the insured by accident, shall be issued or delivered by any insurance company, associa-

tion or exchange issuing such policies, to any person in this Commonwealth until a *copy of the form* thereof, and of the *classification of risks* and the *premium rates pertaining thereto,* have been filed with and formally approved by the Insurance Commissioner. If the Insurance Commissioner shall notify in writing the company, corporation, association, or other insurer which has filed such form *that it does not comply with the requirements of law,* specifying the reason for his opinion, *it shall be unlawful for any such insurer to issue any policy in such form.* The action of the Insurance Commissioner in this regard shall be subject to review . . . ." (Emphasis added.)

Under Section 616 when the form is submitted for approval the classification of risk and the premium rates charged are also examined. It follows then that subsequent review would examine these same factors individually or collectively, and the result could serve as the basis for a denial of the privilege of issuing or delivering the form within the Commonwealth. That rates are a factor in determining the suitability of the policy was substantiated by 100 Op. Pa. Att'y. Gen. 142-45 (1958) : "It is, therefore, the opinion of this Department, and you are accordingly advised that under Section 616 . . . the Insurance Commissioner has not only the power to approve or disapprove premium rates pertaining to policies of accident and health insurance before such policies are issued but has the duty and obligation to exercise such authority under the aforesaid law." Moreover, in looking at the form filed one sees that rate schedule is made part of the policy form and so is risk classification which are subject to review for eventual approval or disapproval by the Commissioner. Therefore, the Commissioner could properly base a disapproval on either rate or risk criteria.

Appellant next argues the issue of unfair discrimination as defined in Section 353, 40 P.S. §477a and Sec-

tion 626, 40 P.S. §761. Section 353 states: "Unfair discrimination between individuals of the same class in the amount of premiums or rates charged for any policy of life, health and accident insurance, covered by this act, . . . or in the benefits payable thereon, or in any of the terms or conditions of such policy, or in any other manner whatsoever, is prohibited."

Section 626, 40 P.S. §761 provides: "Discrimination between individuals of the same class in the amount of premiums or rates charged for any policy of insurance covered by this act, or in the benefits payable thereon, or in any of the terms or conditions of such policy, or in any other manner whatsoever, is prohibited."

Section 616 provides: "If the Insurance Commissioner shall notify in writing the company . . . which has filed such form *that it does not comply with the requirement of law . . . it shall be unlawful for any such issuer to issue any such policy in such form*." (Emphasis added.) In the instant case, the "requirement of law" is the discrimination found in Sections 353 and 626. The unfair discrimination issue is kindred to "the availability of risk" and "rate classification" as a consideration for the Commissioner's adjudication. The Commissioner, in his third conclusion of law, holds that the approval was rejected because the forms effected unfair discrimination and that they were not in accord with sound actuarial principles. The thrust of the Commissioner's position is that there is discrimination in rate and risk classification because the $1.00 flat charge is applied to all policies regardless of risk insured. We agree. Discrimination can easily be conceptualized when we find two consumers paying different premiums for the same policy,[2] or the same premium for different cover-

---

[2] In *Stern v. Mass. Indemnity and Life Insurance Co.*, 365 F. Supp. 433 (E.D. Pa. 1973) where the Pennsylvania discrimination provision was in issue, the court held that charging different rates to men and women for the same coverage may be discriminatory.

age,[3] or allowing the amount of coverage to be guided by one's earned income.[4] In the instant case, the discrimination while not so obvious, is apparent. The Commissioner recognized it when in his adjudication he found that:

"3. Each of the policy forms at issue include an initial monthly premium of $1.00 regardless of coverage or rating classification.

"4. Charging $1.00 for the first month of the policy periods at issue is discriminatory because persons in different rating classifications under the same policy are charged the same $1.00 premium for the first month. For example, A, within the family rate classification, purchasing policy P322B for accident and sickness coverage, would pay $1.00 the first month and $7.95 for each succeeding month. B, within the single male classification, purchasing the same policy, the same coverage, would pay $1.00 for the first month and $3.95 for each succeeding month."

Actuarial justification for the difference of classification is obvious where there is a $7.95—$3.95 differential in the second through the eleventh month period. The $1.00 premium in the first month in no way relates actuarily to the risk involved and is discriminatory, as the Commissioner found:

"6. Charging $1.00 for the first month of the policy periods at issue is discriminatory because persons buying different policies, offering different coverages are charged the same premium for the first month. For example, A, purchasing policy P322B, a hospital poli-

---

[3] In *Reincorporation of Beneficial Society*, 23 D. & C. 2d 114 (Dept. of Justice Op. 1960) the court stated that charging the same rate to participating and non-participating policyholders may be discriminatory.

[4] Earned income as a basis for discrimination was raised in *Maximum Group Insurance Limits*, 13 D. & C. 2d 395 (Dept. of Justice Memo Op. 1959).

cy, would pay $1.00 the first month and $3.95 for each succeeding month. B, purchasing policy P328A providing coverage for accidents and dread diseases, would pay $1.00 for the first month and $2.16 for each succeeding month.

"7. If rates vary by policy and coverages in the second and succeeding months, they should also vary in the first month."

Here again there appears to be no justification for the equal rate applied to holders of totally diverse policies with diverse risks.

"8. Charging $1.00 for the first month of the policy periods at issue is discriminatory because persons retaining the same policy for different periods of time are charged different average monthly premiums. For example, A, purchasing any of the policy forms at issue, might pay $1.00 for the first month and $5.00 for each succeeding month. If A held the policy for four months he would pay $3.25 per month. B, holding the same policy at the same rate for three months would pay an average of $3.67 per month.

"9. Persons retaining the same policy for different periods of time should pay the same average monthly premium."

There is no actuarial evidence of record to show that a shorter time contract costs the insurer less to cover the holder which, of course, would be reflected in lower premiums. This is discrimination.

Additional evidence of discrimination and actuarial unsoundness can be found in a table of rates in evidence concerning an accident benefit policy. The explanation of that table[5] indicates that the annual rate charged is divided by 11.0 to get the level monthly premium. This

---

[5] The explanatory portion of that table states: "To determine the quarterly, semi-annual and annual rates, multiply the above quoted monthly rates by 3.0, 5.64 and 11.00 respectively.

suggests to us that the entire annual premium is being recovered over the eleven month period commencing with the second month payment. Thus there would seem to be little justification for the across the board $1.00 flat premium in the first month of payment on policies of diverse risk if appellant is receiving the entire actuarial annual premium in the remaining months of the policy year. Evidence of record would indicate acceptable actuarial practice to be a division of the annual rate into twelve equal parts which is not the case before us. The evidence is clear that the practice of charging a $1.00 initial premium, regardless of risk insured, is actuarily unsound. For this and the other reasons enumerated above, we affirm the adjudication of the Insurance Commissioner.

In light of the foregoing consideration and substantial evidence of record, we find that the Commissioner properly concluded that the $1.00 initial premium can and does discriminate within the meaning of Sections 353 and 626 and must therefore affirm.

### ORDER

AND NOW, this 1st day of November, 1974, the adjudication of the Insurance Commissioner is hereby affirmed.