The Summit School, Inc., Petitioner v. Commonwealth of Pennsylvania, Department of Education, Respondent.

624

Argued December 4, 1978, before Judges CRUMLISH, JR., BLATT and CRAIG, sitting as a panel of three.

*Robert L. Franklin,* with him *Franklin, Grodinsky & Boonin,* for petitioner.

*John A. Alzamora,* Assistant Attorney General, with him *Patricia A. Donovan,* Deputy Attorney General, for respondent.

OPINION BY JUDGE CRUMLISH, JR., June 29, 1979:

A "Petition for Review in the Nature of Mandamus" initiated a request by the Summit School (Sum-

mit) that the Pennsylvania Department of Education (Department) be compelled to act upon an application for Department approval of Summit's special education program for socially and emotionally disturbed students. An Answer and Summit's Motion for Judgment on the Pleadings followed.

Summit is a private school for handicapped children licensed by the State Board of Non-Public Schools.[1] For a number of years it has had specific licensure for the special education of both learning disabled and brain damaged school-aged children and Department approval as a school entitled to receive state tuition reimbursement for the special education of Pennsylvania resident brain-damaged/learning-disabled children whose enrollment in the school has been approved by the Department.[2]

Summit has applied for Department approval as a school for the special education of tuition reimbursable emotionally and socially disturbed students. The Department refused to process the application asserting that the statute and regulations impose no duty to so act.

The questions for determination are whether Sections 1372(3) and 1376(a) of the statute[3] and Regulation 171.23(a) of the Pennsylvania Code[4] require the Department to evaluate all applications by private schools for "approved private school"[5] status and give a determination as to their eligibility to receive tuition

---

[1] Section 1 of the so-called Miscellaneous School Laws of Pennsylvania, Act of June 25, 1947, P.L. 951, *as amended*, 24 P.S. §2731 et seq.

[2] *See* Section 1376 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §13-1376 (hereinafter referred to as the School Code). *See also* 22 Pa. Code §§13.14, 171.23.

[3] Section 1372(3) of the School Code, 24 P.S. §13-1372(3). Section 1376(a) of the School Code, 24 P.S. §13-1376(a).

[4] 22 Pa. Code §171.23(a).

[5] 22 Pa. Code §171.11 provides:

reimbursements for exceptional children regardless of the Commonwealth's need for these institutions; whether refusal by the Department to evaluate such applications constitutes an abuse of its discretion; whether mandamus may issue to compel the Department to process Summit's application for approval.

Section 1372(3) of the Public School Code provides:

> Except as herein otherwise provided, it shall be the duty of the board of school directors of every school district to provide and maintain, or to jointly provide and maintain with neighboring districts, special classes or schools in accordance with the approved plan. The Secretary of Education shall superintend the organization of such special classes and such other arrangements for special education and shall enforce the provisions of this act relating thereto. If the approved plan indicates that it is not feasible to form a special class in any district or to provide such education for any such child in the public schools of the district, the board of school directors of the district shall secure such proper education and training outside the public schools of the district or in special institutions, or by providing for teaching the child in his home, in accordance with rules and regulations prescribed by the Department of Education, on terms and conditions not inconsistent with the terms of this act. . . .

---

Approved private school—

A private school licensed by the State Board of Private Academic Schools when the specific special education program for certain exceptional handicapped persons is approved by the Secretary and is thereby eligible to receive payments for tuition, or tuition and maintenance, from funds of the school district of the Commonwealth, or both.

Section 1376(a) provides in pertinent part:

When any child . . . who is . . . socially and emotionally disturbed, is enrolled with the approval of the Department of Education as a pupil in any of the schools or institutions for the . . . socially and emotionally disturbed, under the supervision of, subject to the review of or approval by the Department of Education, in accordance with standards and regulations promulgated by the Council of Basic Education, the school district . . . shall pay twenty-five percentum (25%) of the cost of tuition and maintenance . . . as determined by the Department. . . .

Summit first contends that in reading these sections we find a duty on the Department to evaluate all applications by private schools for "approved private school" status, arguing:

1. That the plain language of the sections imposes a duty.

2. Alternatively, that the duty may be inferred from the legislative intent.

We find no specific language in the statute which imposes a duty on the Department to act upon applications for "approved" status. Nor may such a duty be inferred from the legislative intent. While the Statutory Construction Act of 1972, 1 Pa. C.S. §1921, empowers the Court to resolve statutory ambiguities by determining the legislative intent, the legislature in enacting a statute is presumed not to have intended a result which is absurd, illogical or unreasonable. *Physicians Mutual Insurance Co. v. Denenberg,* 15 Pa. Commonwealth Ct. 509, 327 A.2d 415 (1974).

The legislative purpose of Article XIII, Subsection (f) of the Public School Code[6] respecting exceptional

---

[6] Section 1371 et seq. of the School Code, 24 P.S. §13-1371 et seq.

children is to insure the right of this Commonwealth's handicapped to an education by establishing procedures which guarantee the existence of special education programs designed for their needs. The statute vests in the Department the duty to devise a system of rules and regulations which insure the compliance of the various local school districts with their duty to offer and develop quality special education facilities and as a part of the program authorizes the use of private schools as an alternative means of achieving that result when individual districts or intermediate units cannot feasibly provide acceptable public school education and training. The authority to use does not mean there is a duty to use; no duty is put upon the Department to use private schools nor does the statute encourage their use.[7] Private schools are but one of several alternatives available to carry out the legislative purpose.

Absent a duty in the Department to use private schools for the education of exceptional children or at least language to be found encouraging this use, it is illogical to assume that the legislature intended to compel the Department to process all applications submitted by these schools for "approved" status and give a determination of eligibility for tuition reimbursable status regardless of the Commonwealth's need for such additional schools.

Further, the impractical administrative and supervisory burdens which such duty would impose upon the Department forbids its indulgence. For example, before the Department may approve an application for "approved private school" status, it must conduct an on-site inspection of the applicant school and review each proposed special education program. If the Department approves the school, it must regulate the ad-

---

[7] 22 Pa. Code §§13.11(d), 181.5.

missions of students to the school, audit its finances and insure that the school complies with the Department special education regulations relating to class size, development of individual education plans, disciplining of students and, of course, the confidentiality of student records.

If the Department disapproves a school at either the application or on-site visit stage, an evidentiary hearing must be made available to the disapproved private school which may then seek appellate court review. The effect of imposing such a duty and concomitant administrative burdens is self-evident.[8]

All society recognizes the need of Pennsylvania's handicapped for appropriate education. Careful, thoughtful, controlled management is vital to its success. The most severely of the Commonwealth's handicapped are enrolled in schools like Summit. The Department's duty is to educate these individuals; it must insure not only the availability of facilities to train exceptional children but also the quality of these facilities. If the Department's duty is thwarted by the imposition of administrative duties which are unreasonably burdensome and significantly interfere with its ability to guarantee quality education and to carry out the legislative ordination, then all of us have, by ignorance and neglect, tragically failed in our common obligation.[9]

---

[8] It will increase the administrative and supervisory burdens of the Department without regard to its limited resources; it will increase the propensity of the Department to become embroiled in prolonged litigation; it will lessen the Department's ability to control the number and quality of private schools eligible to receive state tuition reimbursable students; and will permit the uncontrolled spread of such institutions without regard to the need of the Commonwealth for such institutions.

[9] Further, our refusal to find a duty on the part of the Department to act upon applications for "approved private school" status does not enable the Department, as Summit contends, to circumvent

Second, Summit argues that Department of Education Regulation 171.23(d)[10] limits the Department's discretion and requires it to process and evaluate applications for "approved private school" status. We find this to be without merit. Section 171.23(d) merely prescribes those procedures which the Department must follow when it decides to evaluate an application and spells out just when an application is considered "approved."

. Moreover, Regulation 13.14[11] provides that the Secretary "may approve, *as necessary* certain private schools in those areas of the State where such programs cannot be provided by the school district, intermediate unit or other state agency." (Emphasis added.) The limitation "as necessary" indicates an intention that the Department need not act so long as it uses other alternatives in providing education for exceptional students.

Third, Summit argues, as we understand it, that by refusing to either approve or disapprove its application, the Department has abused its discretion. Matters delegated to an agency's discretion are subject to review by this Court for a manifest, palpable or flagrant abuse of such discretion. Summit contends that the refusal to exercise discretion is an arbitrary act.

---

the legislative intent, frustrate the local districts in the performance of their duties or immunize the Department from suit. To the contrary, by refusing to place unreasonable administrative burdens upon the Department, we ensure the efficacious administration and quality of our special education programs. Moreover, the statute places certain duties upon the Department to supervise and approve special education programs and guarantee that such programs are made available to exceptional students. Failure of the Department to perform the duties raises a cause of action in the parties to whom the duty is owed; thus the claim that the Department may immunize itself from suit is without merit.

10 *See* footnote 4, *supra.*

11 22 Pa. Code §13.14(d).

We disagree. There is no evidence that the Department's refusal to evaluate Summit's application was selectively applied or in bad faith.

Finally, mandamus will not lie to compel the agency to act upon this application. Mandamus being an extraordinary remedy will lie only where there is a clear legal right in the plaintiff and a corresponding duty in the governmental unit and the request is ministerial. In the absence of a legal duty in the governmental agency to do the thing sought, mandamus is misplaced.

Accordingly, we

ORDER

AND Now, this 29th day of June, 1979, the plaintiff's complaint in mandamus is dismissed.