**WOODS SERVICES, a Pennsylvania Non–Profit Corporation, Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE OF the COMMONWEALTH OF PENNSYLVANIA, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 11, 1996.

Decided Aug. 1, 1996.

Thomas E. Coval, for Petitioner.

Howard Ulan, Senior Assistant Counsel, for Respondent.

Before McGINLEY and KELLEY, JJ., and MIRARCHI, Jr., Senior Judge.

McGINLEY, Judge.

Presently before this Court are Woods Services' (Woods) motion for summary judgment and the Department of Public Welfare's (DPW) cross-motion for summary judgment filed in our original jurisdiction.[1]

Woods is a non-profit organization located in Bucks County, Pennsylvania which provides educational and residential services to mentally retarded individuals. Woods applied to the Pennsylvania Department of Health (Department of Health) for a certificate of need (CON) for a proposed 102 bed intermediate care facility (ICF) for the mentally retarded. In December of 1994, the Department of Health issued the CON which authorized the ICF to serve residents of New York, New Jersey and Maryland but not residents of Pennsylvania. Woods then applied to DPW for the necessary license to operate the ICF. DPW notified Woods that it would not license the ICF because there were no Pennsylvania residents.

On August 22, 1994, Woods submitted applications to DPW for licensing so that Woods could convert two of its licensed community residential facilities to an ICF. On December 5, 1994, DPW notified Woods by letter that "the Department has decided not to act on these applications since no benefit to the citizens of the Commonwealth would result from such action." Letter of December 5, 1994, from Nancy R. Thaler, Deputy Secretary, to Robert G. Griffith, President of Woods at 1; Reproduced Record (R.R.) at 51a.

On January 23, 1995, Woods filed a petition for review in the nature of a complaint in equity and mandamus (complaint) against DPW alleging:

---

1. Section 761(a) of the Judicial Code, 42 Pa.C.S. § 761(a) provides that "[t]he Commonwealth Court shall have original jurisdiction of all civil actions or proceedings: (1) Against the Commonwealth government including any officer thereof, acting in his official capacity...."

10. DPW has not denied Woods' Application within the meaning of its regulations published at 7 Pa. B. 3267–3270, has not afforded Woods an opportunity for hearing, has not issued an adjudication, but has declined to act on the Applications on the purported ground that no benefit to the citizens of the Commonwealth will result from considering the applications.

11. In order to serve residents of other states and to receive medical assistance payments through states, Woods is required by the laws of those states, and the laws and regulations of the United States, to be licensed as an ICF/MR by the jurisdiction in which it is located, the Commonwealth of Pennsylvania. It cannot be so licensed by any other jurisdiction.

12. Woods is suffering, and will continue to suffer irreparable harm by reason of the refusal of DPW to act on its Applications.

13. DPW has the mandatory duty to investigate and examine Woods' Applications, and to license and certify it as an ICF/MR if the licensing and certification requirements are met by reason of 35 P.S. § 448.802a, 62 P.S. §§ 1001, 1002, 1007, 1016, 71 P.S. § 603(a), the decision of the *Supreme Court of Pennsylvania in Hospital Association of Pennsylvania v. MacLeod*, 487 Pa. 516, 410 A.2d 731 (1980), and other statutes, regulations and decisions of the Commonwealth of Pennsylvania.

Complaint, Paragraphs 10–13 at 3–4. DPW answered the complaint.[2]

In support of its motion for summary judgment Woods contends that DPW has the statutory duty to consider all applications and to either grant or deny the applications depending upon whether statutory and regulatory standards are met. DPW asserts in support of its cross-motion for summary judgment that pursuant to *The Summit School, Inc. v. Department of Education*, 43 Pa.Cmwlth. 623, 402 A.2d 1142 (1979) and *Frisby v. Department of Public Welfare*, 133 Pa.Cmwlth. 587, 577 A.2d 229 (1990) DPW has no duty to act on license applications and

that its failure to act is not an abuse of discretion.

Pa. R.C.P. 1035 provides in pertinent part:

(a) After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings and any depositions, answers to interrogatories, admissions on file and supporting affidavits.

(b) The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Section 802.1 of the Health Care Facilities Act (Facilities Act), Act of July 19, 1979, P.L. 130, *as amended*, 35 P.S. § 448.802a provides:

An institution which provides on a regular basis health-related care and services to resident individuals who do not require the degree of care and treatment which a hospital or skilled nursing facility is designed to provide but who because of their mental or physical condition require health-related care and services above the level of room and board. *Intermediate care facilities exclusively for the mentally retarded commonly called ICF/MR shall not be considered intermediate care facilities for the purpose of this act and shall be licensed by the department of public welfare.* (emphasis added).

Section 2313 of The Administrative Code of 1929 (Administrative Code), Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 603 provides:

The Department of Public Welfare shall have the power and its duty shall be:

(a) To administer and enforce the laws of the Commonwealth relative to mental health, the care, prevention, early recognition and treatment of mental illness, mental defects, epilepsy, and inebriety, *the licensing and regulation of institutions for*

---

**2.** On February 17, 1995, DPW filed preliminary objections in the nature of a demurrer asserting that Woods failed to state a cause of action upon which relief has been granted. This Court overruled DPW's preliminary objection and directed DPW to file an answer.

*the mentally ill, mentally defective and epileptic* .... (emphasis added).

In *Frisby* DPW refused to renew the personal care home license of Mattie Morris Frisby (Frisby). Following an administrative hearing, DPW denied Frisby's appeal and this Court dismissed her appeal for failure to file a brief. Subsequently, DPW ordered Frisby to close her home, the Morris Arms. On February 9, 1990, Frisby and Avery Lofton (Lofton), her son, filed a complaint seeking to enjoin the closing of the home and to compel DPW to act on Lofton's new license application to operate the Morris Arms. DPW filed a preliminary objection in the nature of a demurrer and a counterclaim seeking to enjoin the unlawful operation of the Morris Arms.

This Court refused to compel DPW to act upon Lofton's application and stated:

> Counsel for DPW explained that the agency first wanted to resolve the earlier litigation involving Ms. Frisby by closing the Morris Arms and relocating its residents. DPW's concern is that, if it were to deny Mr. Lofton's application before the home closed, it would enable Petitioners to operate the home without a license pending appeal. Petitioners are attempting to do indirectly what they failed to do directly. They admit in their complaint that building and fire code violations were not corrected in a timely fashion and that Mattie Morris Frisby and her son now seek a reevaluation of the Morris Arms in view of current conditions. DPW's decision to withhold action is intended to effectuate the licens-

ing requirement of the Public Welfare Code [Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §§ 101–1411] and is not an abuse of discretion. (footnote omitted). *Frisby,* 577 A.2d at 231. This Court sustained DPW's preliminary objection in the nature of a demurrer and dismissed the petition for review.

The facts in the present matter are distinguishable and warrant a different result. First, in *Frisby* DPW refused to renew a personal care home license following an administrative hearing because of numerous building and fire code violations, while here, DPW has refused to act on Woods' application without determining whether there was statutory and regulatory compliance. Second, the record established that if DPW denied Lofton's application then Frisby would possibly be in a position to operate the Morris Arms without a license pending any appeal. Third, although this Court acknowledged that DPW could not be compelled to initiate an investigation we noted that DPW must act on the application within a reasonable time. Lastly, in *Frisby* we reviewed only Section 1007 of the Public Welfare Code, 62 P.S. § 1007.[3] Here, we are dealing with a unique statutory framework that authorizes the Department of Health to initially determine the need for a service and then authorizes DPW to issue any appropriate license and to certify the service. Responsibility always accompanies authority.

In the present controversy, the Department of Health has determined that there is a need for the ICF.[4] Although DPW listed a

---

**3.** Section 1007 of the Public Welfare Code provides:

> When after investigation, the department is satisfied that the applicant or applicants for a license are responsible persons, that the place to be used as a facility is suitable for the purpose, is appropriately equipped and that the applicant or applicants and the place to be used as a facility meet all the requirements of this act and of the applicable statutes, ordinances and regulations, it shall issue a license and shall keep a record thereof and of the application.

**4.** Donna F. Wenger, Deputy Secretary for Planning and Quality Assurance of the Department of Health, to Robert G. Griffith, President of Woods:

> I am pleased to advise you that the Department of Health is approving a Certificate of Need for the project as described on the enclosed 'Record of action.' The decision is based on the following findings:
> 1. The project has been determined to be needed, and the clients to be served have been identified as residents of the States of New York, New Jersey and Maryland. The applicant will not accept residents of Pennsylvania as stated in the application.
> 2. The project is in compliance with Mental Retardation Policy Bulletin No. 99–86–06 and is supported by the Office of mental Retardation in the department of Public Welfare.
> 3. The project is financially feasible.
> Letter of December 16, 1992, at 1; R.R. at 17a.

number of concerns for not acting, we believe that DPW has the statutory responsibility to either grant or deny Woods' license application.[5]

Accordingly, we enter summary judgment in favor of Woods to the extent that DPW is directed to consider Woods' license application and to issue a decision under the applicable statutes and regulations within sixty days from the date of this Court's order. DPW's motion for summary judgment is denied.

### ORDER

AND NOW, to wit, this 1st day of August, 1996, Woods Services' motion for summary judgment is granted and DPW is directed to consider Woods Services' license application and to issue a decision within sixty days from the entry of this order. Also, the Department of Public Welfare's motion for summary judgment is denied.

---

**5.** We also note that *Summit School* is distinguishable from the present matter. Again in that case the statute involved was the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101–27–2702 and the Pennsylvania Department of Education's regulations. Also, in *Summit School*, one of the reasons this Court advanced for not requiring the Board to act on a license application was "the uncontrolled spread of such institutions without regard to the need of the Commonwealth for such institutions." *Id.* at 1145, n. 8. This has already been determined not to be the case in the present matter.