624 A.2d 802

### ALLEGHENY INTERMEDIATE UNIT # 3 EDUCATION ASSOCIATION

v.

### NORTH HILLS SCHOOL DISTRICT, Appellant.

### ALLEGHENY INTERMEDIATE UNIT # 3 EDUCATION ASSOCIATION

v.

### NORTH ALLEGHENY SCHOOL DISTRICT, Appellant.

Commonwealth Court of Pennsylvania.

Argued March 3, 1993.

Decided April 22, 1993.

Lee V. Price, for appellant North Hills School Dist.

William C. Andrews, for appellants North Allegheny and Moon Area School Districts.

Ronald N. Watzman, for appellee.

Before DOYLE, PALLADINO, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

FRIEDMAN, Judge.

North Allegheny School District and North Hills School District (School Districts) have filed a consolidated appeal from an order issued by the Court of Common Pleas of Allegheny County in a declaratory judgment action requiring the School Districts to offer certain teaching vacancies to suspended teacher members of the Allegheny Intermediate Unit # 3 Education Association (Association).

The sole issue before us is whether the trial court properly interpreted § 1113(b.1) of the Transfer of Entities Act (Act) of the Public School Code of 1949.[1] The Act provides in pertinent part:

Section 1113. Transferred programs and classes.

(a) When a program or class is transferred as a unit from one or more school entities to another school entity or entities, professional employes who were assigned to the class or program immediately prior to the transfer and are classified as teachers as defined in section 1141(1) and are suspended as a result of the transfer and who are properly certificated shall be offered employment in the program or class by the receiving entity or entities when services of a professional employe are needed to sustain the program or class transferred, as long as there is no suspended professional employe in the receiving entity who is properly certificated to fill the position in the transferred class or program.

(b) Transferred professional employes shall be credited by the receiving entity only for their sick leave accumulated in the sending entity and also for their years of service in the sending entity, the latter for purposes of sabbatical leave eligibility and placement in the salary schedule: Provided, however, That such employes shall not utilize the sabbatical leave until they have taught in the receiving entity for a period of three (3) years. Such employes shall transfer

1. Act of March 10, 1949, P.L. 30, *as amended,* added by Section 5 of the Act of February 4, 1982, P.L. 1, *as amended,* 24 P.S. § 11–1113(b.1).

their accrued seniority in the area of certification required for the transferred program or class only.

(b.1) Professional employes who are classified as teachers and who are not transferred with the classes to which they are assigned or who have received a formal notice of suspension shall form a pool of employes within the school entity. No new professional employe who is classified as a teacher shall be employed by a school entity assuming program responsibility for transferred students while there is:

(1) a properly certificated professional employe who is classified as a teacher suspended in the receiving entity; or

(2) if no person is qualified under clause (1), a properly certificated member of the school entity pool who is willing to accept employment with the school entity assuming program responsibility for transferred students. Members of the pool shall have the right to refuse employment offers from such school entity and remain in the pool. Refusal to accept work under this subsection shall not be grounds for denial of unemployment compensation under sections 401 and 402 of the act of December 5, 1936 (2nd Sp.Sess., 1937 P.L. 2897, No. 1), known as the "Unemployment Compensation Law."

The parties stipulate as to all relevant facts. For the 1992–1993 school year, each of the School Districts took over certain special education classes which were previously contracted out to another school entity, namely the Allegheny Intermediate Unit (AIU).[2] The North Allegheny School District took over

2. Each school district in the Commonwealth is entitled to the services of an intermediate unit. Section 951 of the Public School Code of 1949, 24 P.S. § 9–951. Intermediate units provide a varied program of services which include, among other things, "auxiliary services." Auxiliary services are defined as "guidance, counseling and testing services; psychological services; visual services ... services for exceptional children; remedial services; speech and hearing services; services for the improvement of the educationally disadvantaged ... and such other secular, neutral, nonideological services as are of benefit to all school children and are presently or hereafter provided for public school children of the Commonwealth. Section 972.1(b) of the Public School

23 learning support, speech, life skills support and hearing impaired classes. The North Hills School District took over two emotional support classes. As a result of these transfers, and pursuant to the requirements of § 1113(a) of the Act, all 25 AIU teachers who taught these classes were suspended and then re-hired by the corresponding School District to teach the transferred classes.

Following their decisions to take over the above-described special education classes, both School Districts declared certain special education teaching vacancies which the parties stipulate are unrelated to the special education classes transferred in from the AIU.[3]

As noted above, the appellant School Districts re-hired every one of the twenty-five teachers who were suspended as a result of the classes transferred. However, at the time the appellant School Districts declared the additional vacancies which were unrelated to the transferred classes, there was a pool of AIU teacher members who had been suspended when their classes were transferred to other school districts.

The Association, a labor organization for AIU employees, filed declaratory judgment actions against the appellant School Districts,[4] seeking a determination that subsection (b.1) of the Act requires receiving school districts to fill *all* teaching vacancies with properly certified suspended sending entity teachers from the pool, regardless of whether the vacancies

Code of 1949, added by the Act of August 1, 1975, P.L. 180, *as amended,* 24 P.S. § 9–972.1(b).

3. North Allegheny School District created five and a half new positions, and the North Hills School District created three new positions and had one additional vacancy resulting from the voluntary transfer of a special education teacher to another position.

The parties stipulated that North Hills School District had no suspended teachers of its own to fill its vacancies. There was no such stipulation with regard to the North Allegheny School district. However, the absence of such a stipulation seems to be of no consequence because no one has argued that anyone was qualified for the teaching vacancies under § 1113(b.1)(1).

4. The Association filed a similar action against the Moon Area School District, upon which the trial court also ruled. The Moon Area School District was originally an appellant in the matter before us, but the case has since settled.

are related to a class or program transfer. The trial court agreed and ordered the School Districts to offer the teaching vacancies [5] to members of the AIU pool in order of seniority.[6]

On appeal,[7] the School Districts contend that the trial court erred in its interpretation of subsection (b.1). They argue that because the legislature entitled § 1113 "Transferred programs and classes," [8] school districts should only have to hire from the pool when the vacancy is related to the program or classes transferred.

The Association, on the other hand, argues that the plain meaning of subsection (b.1) requires that any vacancy created in a receiving school district, *whether related or unrelated to the transfer,* must be filled by a properly-certified pool member willing to accept the position, assuming the school district has no suspended, certified teacher of its own to recall. We agree.

We are unpersuaded by the School Districts' argument relating to the title of the statute. Although the title of a statute may be considered in the construction of that statute, it is not controlling. 1 Pa.C.S. § 1924. Furthermore, the title, "Transferred programs and classes," does not require that subsection (b.1) applies only when the vacancies are related to the programs or classes transferred to the receiving entity. To the contrary, we find that the trial court's interpretation of subsection (b.1) is in perfect alignment with the title. Subsection (b.1) functions to place certain hiring obligations on

5.  The trial court actually ordered the North Allegheny School District to hire pool members for only four of its five and one half teaching vacancies because the parties stipulated that no one in the pool was qualified to fill the remaining one and one half vacancies.

6.  The issue of whether the pool employees had to be hired in order of seniority was decided at the trial level and has not been raised on appeal.

7.  Our scope of review in an action for declaratory judgment is limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed, or whether the trial court abused its discretion. *Love v. Borough of Stroudsburg,* 131 Pa. Commonwealth Ct. 11, 569 A.2d 389 (1990), *affirmed,* 528 Pa. 320, 597 A.2d 1137 (1991).

8.  Act of February 4, 1982, P.L. 1.

school entities who have received transferred programs and classes.

Unlike § 1113(a), subsection (b.1) does not limit its applicability to instances where the teachers are suspended "as a result of the transfer" and are needed "to sustain the program or class transferred." By omitting these qualifications in subsection (b.1), the legislature indicated that it did not intend to limit the employment obligation of the receiving entity to positions related to the program or class transferred. Section 1921(b) of The Statutory Construction Act of 1972 [9] requires that "[w]hen the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." We find that the words of subsection (b.1) are clear and free from ambiguity. Thus, we must not disturb their plain meaning.

The School Districts assert that subsection (b.1)'s reference to school entities "assum*ing* program responsibility for transferred students" as opposed to school entities who have assum*ed* such responsibility is additional indication that subsection (b.1) applies only to the initial transfer and not to future vacancies. We do not accept this argument. We find that use of the word "assuming" connotes the continuation of acquiring program responsibility as opposed to the initial assumption of responsibility.

Moreover, were we to construe subsection (b.1) as the School Districts request, subsection (b.1) would have no meaning independent from the meaning of § 1113(a). Under § 1113(a), receiving entities are already obligated to hire any sending entity teachers who are suspended as a result of the transfer and whose services are needed to sustain the transferred program or class. The School Districts' interpretation of subsection (b.1) reduces it to surplusage. The Statutory Construction Act requires that every statute "shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). Thus, the correct interpretation of subsection (b.1) is that the teaching vacancies need not be related to the program or classes transferred.

9. 1 Pa.C.S. § 1921(b).

The School Districts further contend that the General Assembly could not possibly have intended that any school district which receives a transferred class must accept teachers from the pool for general employment throughout the district. They assert that the trial court's interpretation of subsection (b.1) effects an absurd result because it gives pool members advantages which other suspended teachers do not receive. Pool members have the opportunity to be recalled by the AIU or by any of the surrounding districts which have re-acquired AIU classes. Other suspended teachers are eligible for recall only in the district of current employment. Section 1125.1(d) of the Public School Code of 1949, added by the Act of November 20, 1979, P.L. 465, *as amended,* 24 P.S. § 11–1125.1(d). Pool members also have the option to remain in the pool even if they refuse employment from a receiving school entity, whereas other suspended teachers generally may not refuse a position. *Id.*

However, as the Association points out, subsection (b.1) was enacted at the same time the General Assembly made extensive changes in the funding of special education classes for the 1991–1992 school year. *See* Act of August 5, 1991, P.L. 219. As a result of these changes, it became financially beneficial for school districts to reclaim special education programs from the intermediate units. Subsection (b.1) was enacted with the expectation that the funding changes would result in the suspension of many intermediate unit teachers. Contrary to the School Districts' argument, there is nothing absurd about the legislature taking special action to protect intermediate unit teachers at a time when it anticipates that many of them will be suspended.

We affirm.

## ORDER

AND NOW, this 22nd day of April, 1993, the order of the Court of Common Pleas of Allegheny County, dated August 19, 1992, is affirmed.

PALLADINO, J., dissents.