# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joyce Cook,                                          :
                                                     :
                    Appellant                        :
                                                     :
            v.                                        : No. 1096 C.D. 2013
                                                     : Argued: March 10, 2014
Chambersburg Area School                             :
District and Shippensburg Area                       :
School District                                      :


BEFORE:    HONORABLE DAN PELLIGRINI, President Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY
SENIOR JUDGE COLINS                              FILED:  July 28, 2014


            Joyce Cook appeals from an order of the Court of Common Pleas of

the 39th Judicial District (Franklin County Branch) granting summary judgment in

favor of Chambersburg Area School District (CASD) and Shippensburg Area

School District (SASD; collectively, the Districts) and dismissing Cook's

complaint against the Districts brought pursuant to Section 1113 of the Public

School Code of 1949, commonly referred to as the Transfer Between Entities Act

(Act).[1]  For the reasons that follow, we affirm the order of the trial court.

            Prior to the commencement of this action, Cook was employed as a

teacher at the Franklin County Career and Technology Center (Career-Tech

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 11-1113.  The Transfer Between Entities Act, which is also referred to as the Transfer of Entities Act, was added by the Act of February 4, 1982, P.L. 1, No. 1.

Center) for approximately 29 years from 1977 to 2006. (Deposition of Joyce Cook (Cook Dep.) at 8-9, 14, Reproduced Record (R.R.) at 74a, 76a.) The Career-Tech Center is a vocational high school located in Chambersburg that serves the six school districts in Franklin County, including CASD and SASD. (Complaint ¶6, R.R. at 6a.)

During her entire career at the Career-Tech Center, Cook taught in the Business Data Processing (BDP) program. (Cook Dep. at 14, R.R. at 76a.) The BDP program, which evolved over time with changing technologies, did not allow students to choose individual courses but rather offered a set three-year curriculum over the sophomore, junior and senior years of high school with instruction in various business related topics, such as software, accounting, business mathematics, office procedures, data processing, and career development. (*Id.* at 14-18, R.R. at 76a-77a; Business Data Processing Program Course of Study, Jan. 2, 2003, R.R. at 302a-333a.) Cook holds bachelor's and master's degrees in education and Department of Education teaching certificates in Accounting, Typewriting and Data Processing. (Cook Dep. at 9-10, R.R. at 74a-75a; Professional Certificate, R.R. at 253a.)

Though the Districts sent students to the BDP program at the Career-Tech Center, both CASD and SASD had for many years prior to 2006 also maintained business education programs in their high schools for students who did not enroll at the Career-Tech Center. (Cook Dep. at 17-18, 62-63, R.R. at 76a-77a, 88a; Deposition of Dr. Eric Michael, Assistant Superintendent of CASD (Michael Dep.) at 14-15, R.R. at 112a.) The business education programs in both of the Districts offered a range of classes on different business topics; during the 2006-2007 school year, SASD offered 15 courses and CASD offered approximately 20

courses.[2]  (Michael Dep. at 14-15, R.R. at 112a; Shippensburg Area Senior High School Program of Studies: 2006-2007 at 8-10, R.R. at 447a-449a.)

Beginning with the 2006-2007 school year, the Districts decided to discontinue sending their students to the BDP program at the Career-Tech Center with the intention of incorporating those students into the existing business education programs at their high schools.  (Complaint ¶¶7, 8, R.R. at 6a; Michael Dep. at 12-13, R.R. at 111a.)  Enrollment in the BDP program had been dwindling for some time; CASD had sent 81 students to the BDP program in the 1998-99 school year and only 25 students in 2004-2005 and 33 students in 2005-2006. (Michael Dep. at 13-17, R.R. at 111a-112a; CASD Enrollment List for BDP Program, R.R. at 157a.)  SASD sent 3 students to the BDP program during the 2004-2005 school year and 5 students in 2005-2006.  (Cook Dep. at 58, R.R. at 87a; SASD Enrollment List for BDP Program, R.R. at 377a-381a.)

Faced with reduced enrollment, the Career-Tech Center decided to close the BDP program at the conclusion of the 2005-2006 school year. (Complaint ¶9, R.R. at 6a; Minutes of Career-Tech Center's May 25, 2006 Joint Operating Committee Meeting at 2, R.R. at 383a.)   The Career-Tech Center informed Cook that she was suspended from her teaching position effective June 30, 2006.   (May 25, 2006 Letter of Chairman of Career-Tech Center Joint

---

[2] CASD's offerings included courses in accounting, word processing, Microsoft software, QuickBooks, A+ computer repair, yearbook production, shorthand, business law, sports and entertainment, personal financial management, accounting, health care and cooperative programs.  (Chambersburg Area Senior High School Program of Studies: 2007-2008, R.R. at 159a-173a.)   SASD offered classes in accounting, word processing, law, personal financial management, computer software, shorthand, yearbook production, desktop publication and cooperative programs.  (Shippensburg Area Senior High School Program of Studies: 2006-2007 at 8-10, R.R. at 447a-449a.)

Operating Committee, R.R. at 384a-385a.) Cook requested a medical sabbatical for the 2006-2007 school year, and the Career-Tech Center approved Cook's sabbatical on June 23, 2006. (May 30, 2006 Sabbatical Leave Request, R.R. at 188a; June 23, 2006 Letter Approving Sabbatical, R.R. at 190a-193a.)

In the spring of 2007, the Districts advertised openings for teaching positions in their business education programs beginning in the 2007-2008 school year.[3] CASD had three openings: one position was for instruction on Essential Software Applications, QuickBooks and Interactive Media; the second position required certification in Office Technology; and the third was a Cooperative Education position. (Michael Dep. at 23-30, R.R. at 114a-116a; CASD Answer to Cook Interrogatory No. 4, R.R. at 136a-137a.) The first opening was the result of a transfer within the school, the second opening was created because of a retirement, while only the third opening, for a Cooperative Education instructor, was a newly created position. (Michael Dep. at 23-30, R.R. at 114a-116a; July 16, 2007 Letter of Jan G. Sulcove, Counsel for CASD, R.R. at 294a.)

Cook applied for the three open positions at CASD on May 21, 2007, and she was interviewed by CASD for the positions shortly thereafter. (Cook Dep. at 38-39, R.R. at 82a; Application, R.R. at 158a.) Cook was informed by CASD in June 2007 that other applicants had been hired to fill the three positions. (Cook Dep. at 39-40, R.R. at 82a.)

SASD had one opening in its business education department for the 2007-2008 school year following a retirement. (Deposition of Dr. Jacqueline

---

[3] CASD had also hired one teacher in its business education department for the 2006-2007 school year; Cook did not apply for the 2006-2007 opening, which was created as a result of an internal transfer. (CASD School Board Minutes of July 26 and Aug. 9, 2006, R.R. at 206a-209a, 211a-218a.) This opening is not at issue in this litigation.

4

Lesney, Superintendent at SASD (Lesney Dep.) at 14-15, R.R. at 529a.) SASD advertised for an opening for a "business education teacher" in early May 2007, and Cook applied for this position on May 9, 2007. (Newspaper advertisements, R.R. at 389a-395a; May 9, 2007 Application, R.R. at 396a-403a.) Cook was not contacted by SASD to interview for this opening. (Cook Dep. at 42, 54, R.R. at 83a, 86a.) On May 31, 2007, the Principal of Shippensburg Area Senior High School informed Cook that the school had hired another teacher for the open business education position. (*Id.* at 54, R.R. at 86a; May 31, 2007 Email of Fred Shilling, R.R. at 423a.)

Shortly after being notified that she had not been hired for the open positions at CASD and SASD, a representative from the Pennsylvania State Education Association (PSEA) sent letters to the Districts stating that PSEA had learned that the Districts filled the open positions with persons other than Cook and that Cook should have been offered the positions pursuant to the Act because the Districts had caused Cook's suspension by deciding to stop sending students to the BDP program. (June 21, 2007 Letters of Marcia A. Bender, R.R. at 292a, 422a.) Cook thereafter filed a grievance against the Career-Tech Center for failure to report to the Districts that she was entitled to vacant positions under the Act. (June 26, 2007 Grievance Report Form, R.R. at 424a.) The grievance was denied. (Cook Dep. at 33-34, R.R. at 80a-81a.)

Cook filed the instant action against the Districts on November 16, 2007. In her complaint, Cook alleged that the decision by the Districts to "take back" the BDP program from the Career-Tech Center, and her resulting suspension, triggered the Act, and that the Districts violated the Act by failing to hire her for their open positions for the 2007-2008 school year. The Districts filed

5

Answers and New Matters in late 2007. In the fall of 2012, following the close of discovery, the Districts filed motions for summary judgment.[4]

On May 29, 2013, the trial court granted the summary judgment motions. The trial court held that there must be a "transfer" of a class or program in order for the Act to provide protection to a suspended teacher, and that the BDP program was not transferred to CASD and SASD. Instead, the trial court concluded that each of the Districts had a preexisting business education department and the BDP program was phased out due to declining student interest. The trial court defined "transfer" in the context of the Act as requiring "the ending of a program or class at one school and restarting of that same program in another school." (Opinion at 4.) The trial court further concluded that, even though CASD created a Cooperative Education position in their business education program for the 2007-2008 school year, Cook was not entitled to the protection of the Act with respect to that opening because she was not certified by the Commonwealth to teach Cooperative Education. (*Id*. at 3-4.) Cook appealed the trial court's rulings to this Court.[5]

On appeal, Cook argues that, by "taking back" their business education students from the Career-Tech Center, the Districts caused a substantial

---

[4] On January 27, 2009, during the pendency of this action, Cook notified the Career-Tech Center by letter of her decision to retire effective February 20, 2009; Cook stated in the letter that she was retiring only because of her suspension and indicated that she wished to remain on the recall list in case a position opened at the Career-Tech Center. (Jan. 27, 2009 Letter, R.R. at 195a.) She began receiving retirement benefits in May 2009. (May 1, 2009 Letter of Public School Employees' Retirement System, R.R. at 197a.)

[5] This Court's standard of review of a trial court's grant of summary judgment is *de novo*, and our scope of review is plenary. *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011); *Evans v. Thomas Jefferson University*, 81 A.3d 1062, 1068 n.3 (Pa. Cmwlth. 2013).

decline in enrollment in the BDP program, which in turn led the Career-Tech Center to eliminate the BDP program and suspend Cook from her position. Cook contends that as a suspended teacher who was not transferred with a specific class she should have been placed in a pool of suspended teachers, pursuant to Subsection (b.1) of the Act, 24 P.S. § 11-1113(b.1), and given hiring preference for any new position that opened in the Districts' business education programs. Cook further argues that the trial court improperly relied on our decision of *Hahn v. Marple Newtown School District*, 571 A.2d 1115 (Pa. Cmwlth. 1990), which Cook contends was abrogated by a subsequent amendment to the Act.

In *Hahn*, the first case requiring this Court to interpret the Act, a Delaware County vocational school decided to discontinue its math classes and suspend three of its four math teachers following a decline in enrollment. *Id*. at 1116-17. The three suspended math teachers gave notice of their rights under the Act to the school districts in Delaware County and then brought an action in the nature of mandamus against a school district that hired a different math teacher. *Id*. at 1116. The trial court ruled in favor of the suspended teachers and the school district appealed. *Id*. at 1116-17.

Recognizing that the term "transfer" was not defined in the Act, we gave the term its common and approved usage, defining it to mean "to carry or take from one person or place to another." *Id*. at 1117. Applying this definition to the facts of the case, we concluded that there was no transfer between the vocational school and the school district based on the fact that the school district offered all of the classes that the vocational school did prior to the suspension of the math program and made no additions to its math department after the suspension. *Id*. We also found that applying the Act in that case would bring

7

about an unreasonable result because the opening was the result of two retirements in the school district's math department rather than the vocational school's suspension of its program. *Id*. at 1117-18. As we explained, "[c]learly, the Act was meant to protect professional employees whose positions were eliminated in one school entity and recreated in another which is not what occurred here." *Id*. at 1118.

In 1991, a year after the *Hahn* decision, the General Assembly amended the Act. *See* Act of Aug. 5, 1991, P.L. 219, No. 25, § 2. Of relevance here, Subsection (a) was amended, to include the italicized language below:

> (a) When a program or class is transferred *as a unit* from one or more school entities to another school entity or entities, professional employes who *were assigned to the class or program immediately prior to the transfer and* are classified as teachers *as defined in section 1141(1)* and are suspended as a result of the transfer and who are properly certificated shall be offered employment in the program or class by the receiving entity or entities when services of a professional employe are needed to sustain the program or class transferred, as long as there is no suspended professional employe in the receiving entity who is properly certificated to fill the position in the transferred class or program.

24 P.S. § 11-1113(a) (emphasis added). In addition, the General Assembly added a new Subsection (b.1):

> (b.1) Professional employes who are classified as teachers and who are not transferred with the classes to which they are assigned or who have received a formal notice of suspension shall form a pool of employes within the school entity. No new professional employe who is classified as a teacher shall be employed by a

8

school entity assuming program responsibility for transferred students while there is:

(1) a properly certificated professional employe who is classified as a teacher suspended in the receiving entity; or

(2) if no person is qualified under clause (1), a properly certificated member of the school entity pool who is willing to accept employment with the school entity assuming program responsibility for transferred students. Members of the pool shall have the right to refuse employment offers from such school entity and remain in the pool. ....

24 P.S. § 11-1113(b.1).

Following the 1991 amendment, this Court had occasion again to determine when the Act protects suspended teachers in *Allegheny Intermediate Unit #3 Education Association v. North Hills School District*, 624 A.2d 802 (Pa. Cmwlth. 1993) (en banc). In that case, 25 special education classes were transferred from an Allegheny County intermediate unit to the two defendant school districts, with all 25 of the intermediate unit teachers being transferred with their classes to the defendant school districts. *Id*. at 803-04. There remained, however, a pool of suspended intermediate unit special education teachers whose classes had been transferred to other Allegheny County school districts; when the two defendant school districts subsequently advertised open special education positions that were unrelated to the initial transfer from the intermediate unit, the education association representing the pool of suspended teachers brought suit. *Id*. at 804.

The Court ruled in favor of the suspended teachers, holding that any school district who receives a transferred class must accept other teachers from the

9

pool for employment in their district, even if the vacancy was unrelated to the transfer. *Id.* at 804-06. We concluded that, by omitting in the newly added Subsection (b.1) the requirement of Subsection (a) that teachers be suspended "as a result of the transfer" and are needed "to sustain the program or class transferred," the General Assembly did not intend to limit the hiring obligation of receiving entities to positions related to the transferred class or program. *Id.* at 805. We also found the use of the term "assuming" in Subsection (b.1)(2) shows the continuing obligation of the receiving school after the initial transfer. *Id.* Finally, the Court discussed the intent of the 1991 amendment:

> [S]ubsection (b.1) was enacted at the same time the General Assembly made extensive changes in the funding of special education classes for the 1991–1992 school year. As a result of these changes, it became financially beneficial for school districts to reclaim special education programs from the intermediate units. Subsection (b.1) was enacted with the expectation that the funding changes would result in the suspension of many intermediate unit teachers. Contrary to the School Districts' argument, there is nothing absurd about the legislature taking special action to protect intermediate unit teachers at a time when it anticipates that many of them will be suspended.

*Id.* (citation omitted).

Cook argues that in granting the Districts' summary judgment motions the trial court erroneously relied on *Hahn*, as that case was abrogated by the 1991 amendment to the Act adding Subsection (b.1). While we agree with Cook that the 1991 amendment imposes additional requirements that were not present when the *Hahn* Court interpreted the Act, we find no language in the 1991 amendment to the Act that abrogates the requirement stated in *Hahn* that there be a

10

"transfer" of a program or class to a receiving school before a teacher may claim the protection of the Act. Nor do we find any evidence that the General Assembly impliedly intended to remove the requirement of a transfer of a program or class with the 1991 amendment, which as explained in *Allegheny Intermediate* was done in anticipation of the transfer of special education programs from intermediate units to school districts following funding changes. As we explained in *Allegheny Intermediate*: "Subsection (b.1) functions to place certain hiring obligations on school entities *who have received transferred programs and classes*." 624 A.2d at 805 (emphasis added). This prerequisite of a transfer to the protections of the Act is evidenced in the title given to it by the General Assembly: "Transferred programs and classes."[6] 24 P.S. § 11-1113.

Read together, Subsections (a) and (b.1) of the Act can be understood as providing two layers of protection to teachers affected by inter-school transfers. First, Subsection (a) provides that teachers who are assigned to "a program or class [that] is transferred as a unit" to another school shall be offered employment at the receiving school if necessary to sustain the transferred program or class unless there is a suspended, properly certified teacher in the receiving school to fill the new position. Second, Subsection (b.1) provides protection for teachers affected by a transfer of a program or class but who cannot be transferred with the class to which they were assigned or are suspended because of the transfer. The schools receiving a transferred program or class must then offer any future vacancies – even if unrelated to the initial transfer – to teachers in the pool who are certified for the open position, unless there is a suspended teacher in the receiving school who

---

[6] Though not controlling, the title of a statute may be considered as an aid in its construction. 1 Pa. C.S. § 1924.

11

is certified for that position. However, no matter which subsection of the Act a suspended teacher claims provides a remedy, there must be a transfer of a program or class for the act to take effect.[7]

In the case before us, then, we must determine whether the trial court properly concluded that there was no genuine issue of material fact as to whether any program or class was transferred from the Career-Tech Center to the Districts. In determining whether a transfer occurred, we begin with the meaning of that term given in *Hahn* of "to carry or take from one person or place to another." 571 A.2d at 1117. This definition necessarily implies that a class or program ends at one school and that class or program is brought over or added to another school, and further that the Act is not triggered merely based on the fact that students cease to enroll at one school and instead enroll at another school.

Cook first argues that the BDP program was transferred in its entirety from the Career-Tech Center to the Districts. In support of this argument, Cook attempts to highlight the differences between the BDP program and the business education classes offered at the high schools in the Districts, specifically noting that the BDP program did not offer a buffet of individual courses like the Districts but instead provided students with a set three-year curriculum.

---

[7] We do agree with Cook, however, that the trial court erred in relying on Cook's lack of certification in Cooperative Education to exclude her from the protection of the Act for all the openings at CASD. The trial court concluded that, while the creation of a new Cooperative Education position at CASD for the 2007-2008 school year might provide "some evidence" that this aspect of the BDP program had been transferred from the Career-Tech Center to CASD, Cook was not certified to teach Cooperative Education classes and thus was not entitled to the protection of the Act with respect to that opening at CASD. (Opinion at 3-4.) Under Subsection (b.1), whether Cook was qualified to teach the specific Cooperative Education class was not dispositive of whether she was protected by the Act; instead, so long as there was a transfer of a program or class from the BDP program to either CASD or SASD, Cook would be entitled for *any* opening for which she was properly certified in that district.

12

Regardless of the differences in the instructional styles between the Career-Tech Center and the Districts, however, there is no evidence that the Districts adopted the Career-Tech Center's curriculum. Instead the evidence produced during discovery shows that the Districts continued to offer individual courses rather than the BDP program's set curriculum after the BDP program was shut down due to declining enrollment. (Cook Dep. at 12, 62-63, R.R. at 75a, 88a; Chambersburg Area Senior High School Program of Studies: 2007-2008, R.R. at 159a-173a; Shippensburg Area Senior High School Program of Studies: 2007-2008 at 8-10, R.R. at 489a-491a.) Furthermore, in deciding to cease sending students to the BDP program, the Districts did not intend to recreate the BDP curriculum but rather to address the dwindling interest in the BDP program and the Districts' view that their own, well-established business education programs provided equally as good, if not better, instruction. (*See, e.g.*, Minutes of Career-Tech Center's May 25, 2006 Joint Operating Committee Meeting at 2, R.R. at 383a (approving closure of BDP program "due to duplication and workplace need"); Michael Dep. at 34, R.R. at 117a (explaining that BDP program classes were "very rudimentary" and were comparable to classes taught at the middle school and junior high school level at CASD); Chambersburg Area Senior High School, A Partnership in Change: A New Look at the Career Technology Center, March 2006, R.R. at 186a (noting that CASD had reevaluated its relationship with the BDP program because "no incoming 10th grader has selected that program as a first choice" and "the course offerings at CASHS will equal the opportunities at the Career-Tech school").) Therefore, it is clear that there was no wholesale transfer of the BDP program from the Career-Tech Center to the Districts.

13

Cook also argues that there was a transfer of a class from the BDP program to CASD, namely the creation of a Cooperative Education position at Chambersburg Area Senior High School for the 2007-2008 school year. Cook concedes that she did not hold the certificate required to teach Cooperative Education, (Cook Br. at 13 n.3, 17; Cook Dep. at 24-25, 32, R.R. at 78a, 80a), but contends that she was certified to teach the other two CASD openings and should have been offered those two positions pursuant to Subsection (b.1) of the Act. Of the three new hires in the CASD business education department for the 2007-2008 school year, only the Cooperative Education position was a new position while the other two open positions were created as a result of an internal transfer and a retirement.[8] (Michael Dep. at 23-30, R.R. at 114a-116a.)

While the Cooperative Education opening at CASD was a newly created position, Cook has offered no evidence to show that the creation of the Cooperative Education position was tied to the closing of the BDP program or that CASD adopted the curriculum of the Career-Tech Center's Cooperative Education classes as its own. Rather, the Cooperative Education class was not new to CASD but instead had been offered at CASD long before the closure of the BDP program. (Michael Dep. at 28, R.R. at 115a ("Co-op has been taught within [the CASD] Business Department since its inception."); Chambersburg Area Senior High School, A Partnership in Change: A New Look at the Career Technology Center, March 2006, R.R. at 186a (noting that CASD offered a "COOP experience if desired" to students in its business education department); Sept. 24, 2007 Letter

---

[8] The one open position in SASD for the 2007-2008 school year was created as a result of a retirement and there was no increase in the number of positions in the SASD business education department following the elimination of the BDP program at the Career-Tech Center. (Lesney Dep. at 14-15, 24, R.R. at 529a, 531a.)

14

from Eric Michael, Assistant Superintendent of CASD to James Duffey of the Career-Tech Center, R.R. at 126a (explaining that decision was made to stop sending students to the BDP program in part because "CASD offers a supervised Co-op and Exploratory Career Program through several local businesses").)

Here, at most the evidence would show that the addition of the Cooperative Education position in the 2007-2008 school year was caused by an increase in interest in that program at CASD. In the absence of evidence that the new Cooperative Education position was the result of a transfer, Cook cannot prove a claim under the Act and summary judgment was therefore appropriate. *See* Pa. R.C.P. No 1035.2(2) (summary judgment is appropriate where "after the completion of discovery relevant to the motion, ... an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action"); *Ertel v. Patriot-News Co.*, 674 A.2d 1038, 1042 (Pa. 1996) (holding that failure by a non-moving party to adduce evidence during discovery on an issue that is essential to a claim on which she bears the burden of proof "establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law"); *see also Ario v. Ingram Micro, Inc.*, 965 A.2d 1194, 1207 n.15 (Pa. 2009) (same).

Accordingly, as there was no transfer of a program or class from the BDP program to CASD or SASD, we affirm the trial court's grant of summary judgment in favor of the Districts.[9] While we recognize that Cook's suspension

---

[9] The Districts also argue that even if there was a transfer and Cook fell under the protection of the Act, this Court should still affirm summary judgment because Cook was on a medical sabbatical when she applied for the open positions at the Districts and thus could not have been part of a suspended pool of teachers who were eligible for the protection of the Act at that time. As we affirm the determination of the trial court that there was no transfer of a program or class, **(Footnote continued on next page…)**

15

was through no fault of her own but only the result of the determination by the Districts that they were better suited than the Career-Tech Center to prepare their students for the business world, the decision by the Districts to stop sending their students to the BDP program and instead allow them to take courses in their own well-established business education programs did not bring Cook under the protection of the Act.

_____
JAMES GARDNER COLINS, Senior Judge

_____
**(continued…)**
which is a necessary prerequisite for the protection of the Act in this case, we need not reach the alternate ground argued by the Districts here.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joyce Cook, : 
:
         Appellant : 
:
        v. : No. 1096 C.D. 2013
:
Chambersburg Area School : 
District and Shippensburg Area : 
School District :

# **O R D E R**

AND NOW, this 28th day of July, 2014, the order of the Court of Common Pleas of the 39th District (Franklin County Branch) in the above-captioned matter is hereby AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joyce Cook,                                        :
                          Appellant              :
                                                   :
              v.                                   : No. 1096 C.D. 2013
                                                   : Argued:  March 10, 2014
Chambersburg Area School District        :
and Shippensburg Area School District    :


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


DISSENTING OPINION
BY PRESIDENT JUDGE PELLEGRINI              FILED: July 28, 2014


        Because the majority erroneously limits the application of Section
1113(b.1) of the Public School Code of 1949 (Code)[1] to instances where a teacher
has been suspended as a result of the transfer of a program or class as a unit under
Section 1113(a), I respectfully dissent.


        Section 1113 of the Act provides, in pertinent part:


        (a) When a program or class is transferred as a unit from
        one or more school entities to another school entity or
        entities, professional employes who were assigned to the
        class or program immediately prior to the transfer and are
        classified as teachers as defined in section 1141(1) and
        are suspended as a result of the transfer and who are

        ───────────────
        [1] Act of March 10, 1949, P.L. 30, added by the Act of February 4, 1982, P.L. 1, *as
        amended*, 24 P.S. §11-1113(b.1).

properly certificated shall be offered employment in the program or class by the receiving entity or entities when services of a professional employe are needed to sustain the program or class transferred, as long as there is no suspended professional employe in the receiving entity who is properly certificated to fill the position in the transferred class or program.

\* \* \*

(b.1) Professional employes who are classified as teachers and who are not transferred with the classes to which they are assigned *or who have received a formal notice of suspension shall form a pool of employes within the school entity*. No new professional employe who is classified as a teacher shall be employed by a school entity *assuming program responsibility for transferred students* while there is:

(1) a properly certificated professional employe who is classified as a teacher suspended in the receiving entity; *or*

(2) if no person is qualified under clause (1), a properly certificated member of the school entity pool who is willing to accept employment with the school entity *assuming program responsibility for transferred students*. Members of the pool shall have the right to refuse employment offers from such school entity and remain in the pool….

24 P.S. §11-1113(a), (b.1) (emphasis added).

As the majority notes, in *Allegheny Intermediate Unit #3 Education Association v. North Hills School District*, 624 A.2d 802, 804 (Pa. Cmwlth. 1993), this Court considered whether Section 1113(b.1) "requires receiving school districts to fill *all* teaching vacancies with properly certified suspended sending

entity teachers from the pool, regardless of whether the vacancies are related to a class or program transfer…." (Emphasis in original). As we explained:

> Unlike §1113(a), subsection (b.1) does not limit its applicability to instances where the teachers are suspended "as a result of the transfer" and are needed "to sustain the program or class transferred." By omitting these qualifications in subsection (b.1), *the legislature indicated that it did not intend to limit the employment obligation of the receiving entity to positions related to the program or class transferred*….
>
>          \*      \*      \*
>
> Moreover, were we to construe subsection (b.1) as the School Districts request, subsection (b.1) would have no meaning independent from the meaning of §1113(a). Under §1113(a), receiving entities are already obligated to hire any sending entity teachers who are suspended as a result of the transfer and whose services are needed to sustain the transferred program or class. The School Districts' interpretation of subsection (b.1) reduces it to surplusage….

*Id.* at 805 (emphasis added).

Likewise, the majority's interpretation of Section 1113(b.1) would result in it being mere surplusage and violates the rules of statutory construction. For purposes of Section 1113(b.1), the Chambersburg Area School District (CASD) and the Shippensburg Area School District (SASD) assumed "program responsibility" of the Business Data Processing (BDP) program by absorbing the "transferred students" into their existing business classes whether or not the BDP program or the classes offered thereunder were "transferred as a unit" for purposes

of Section 1113(a). As we explained in *Allegheny Intermediate Unit*, 624 A.2d at 805, "[u]nder §1113(a), [CASD and SASD] are already obligated to hire any sending entity teachers who are suspended as a result of the transfer and whose services are needed to sustain the transferred program or class…." Because Section 1113(b.1) covers **either** professional employees "who are not transferred with the classes to which they are assigned" **or** those "who have received a formal notice of suspension," and because Cook was suspended as a result of the transfer of her students to CASD and SASD, she is entitled to be placed in the preferred hiring pool of employees in CASD and SASD.

Accordingly, unlike the majority, I would reverse the trial court and direct that Cook be placed in the preferred hiring pool established under Section 1113(b.1).

_____
DAN PELLEGRINI, President Judge