Joan CORBETT, Carmel Buratti, John Bewick and Gail Thompson

v.

**SCRANTON SCHOOL DISTRICT and Scranton Federation of Teachers, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 1997.

Decided Nov. 26, 1997.

Reargument Denied Feb. 6, 1998.

P. Daniel Altland, Harrisburg and Michael Brodie, Philadelphia, for appellants.

A. Martin Herring, Philadelphia, for appellees.

Before FLAHERTY and LEADBETTER, JJ., and LORD, Senior Judge.

LEADBETTER, Judge.

Scranton School District (the District) and Scranton Federation of Teachers (the Federation) (collectively, appellants) appeal from an order of the Court of Common Pleas of Lackawanna County entering summary judgment in favor of Ms. Corbett, Ms. Buratti, Mr. Bewick and Ms. Thompson (the Teachers). At issue is whether the phrase "any provision of a collective bargaining agreement in effect on February 4, 1982" in the Transfer Of Entities Act[1] (the Act) refers to a provision in effect on February 4, 1982, or a collective bargaining agreement in effect on February 4, 1982.

Prior to June 1992, the Teachers, as employees of Northeastern Intermediate Unit #19 (the Intermediate Unit), provided educational services to visually and hearing impaired students of the District. In early 1992, the District decided that, beginning the following school year, it would provide these services itself. At the Teachers' request, the Intermediate Unit suspended each of them so that they would be available to be hired by the District. The District hired the Teachers, stating in a letter to each that he or she was being hired pursuant to the Act.[2] Even though each of the Teachers had been employed by the Intermediate Unit for more than seven years, the District credited them with only seven years of experience for salary step purposes. As a result, the Teachers commenced a declaratory judgment action, contending that the Act requires the District to credit them with all of their years of experience when determining their salary.

The District based its decision to credit the Teachers for only seven years of experience on a provision in the then current collective bargaining agreement (CBA), executed in 1990 by the District and the Federation, which provided that "[n]ewly appointed teachers shall receive year for year credit on the salary schedule for no more than seven years of prior teaching experience." This provision had been included in the CBA in effect in 1982 between the District and the Federation and in each successive CBA up to and including the 1990 agreement. The District's decision was based on its view that § 1113(c) of the Act provides that provisions in CBAs supersede the requirements of the Act, as long as the provision at issue was a part of the CBA between the parties in effect on February 4, 1982 and continued to be included in successive CBAs up to and including the governing CBA.

The District, joined by the Federation, and the Teachers filed cross-motions for summary judgment. The trial court disagreed with the District's interpretation of § 1113(c) as set forth above, and granted the Teachers' motion for summary judgment, concluding that a provision in a CBA supersedes the Act's requirements only where the CBA itself was executed prior to February 4, 1982. The trial court, thus, ruled that the

1. Act of March 10, 1949, P.L. 30, *as amended,* added by Section 5 of the Act of February 4, 1982, P.L. 1, *as amended,* 24 P.S. § 11–1113.

2. The Act provides, in pertinent part:

   (a) When a program or class is transferred as a unit from one or more school entities to another school entity or entities, professional employes who were assigned to the class or program immediately prior to the transfer and are classified as teachers as defined in section 1141(1) and are suspended as a result of the transfer and who are properly certificated shall be offered employment in the program or class by the receiving entity or entities when services of a professional employe are needed to sustain the program or class transferred, as long as there is no suspended professional employe in the re-

   ceiving entity who is properly certificated to fill the position in the transferred class or program.

   (b) Transferred professional employes shall be credited by the receiving entity only for their sick leave accumulated in the sending entity and also for their years of service in the sending entity, the latter for purposes of sabbatical leave eligibility and placement in the salary schedule....

   ....

   (c) Nothing contained in this section shall be construed to supersede or preempt any provision of a collective bargaining agreement in effect on February 4, 1982, and negotiated by a school entity and an exclusive representative of the employes in accordance with the act of July 23, 1970 (P.L. 563, No. 195), known as the "Public Employe Relations Act."

Teachers should be credited for all their years of service with the Intermediate Unit. This appeal followed. After review,[3] we reverse.

■ Appellants argue, as a threshold matter, that the protections of the Act do not apply to the Teachers because, since they were suspended at their own request, they were not "suspended" within the meaning of the Act. Specifically, appellants contend that since the Act is a part of the Public School Code of 1949[4] (the Code), the term "suspension" is a term of art that must be interpreted in accordance with its application in § 1125[5] of the Code. While we do not disagree with the general notion that the Act should not be interpreted in a manner inconsistent with the Public School Code, we do not find appellants' analysis persuasive.

There is no indication in the Code, the Act or case law interpreting the Act that a consensual suspension is not considered a suspension under the Act. Section 1125 of the Code, 24 P.S. § 11–1125, merely provides that suspensions imposed for certain specifically identified reasons, as set forth in 24 P.S. § 11–1124,[6] should be carried out in inverse order of seniority. Section 1124 does not govern the suspension of teachers as a result of the transfer of a program from one providing entity to another, such is at issue here, and does not apply to the Act.

■ The Act requires that, when a program is transferred from one school entity to another, teachers who are suspended as a

result of the transfer must be offered employment in the program by the receiving entity, with certain exceptions. Whether teachers are consensually suspended or involuntarily suspended is irrelevant to the requirements of the Act. Moreover, the Department of Education has stated that consensual suspensions are encouraged when a program is transferred under the Act from a providing entity to a school district.[7] Construction of a statute by those charged with its administration and execution, though not binding on a court, should be given some deference. *Luzerne Intermediate Unit # 18 Educ. Ass'n v. Pittston Area Sch. Dist.*, 168 Pa.Cmwlth. 304, 650 A.2d 1112, 1116 (1994).

■ The real issue before this court, namely, whether the Legislature intended the phrase in § 1113(c) of the Act, "in effect on February 4, 1982," to modify the term "provision" or the words "collective bargaining agreement," is one of first impression.[8] This phrase did not appear in subsection (c) until the Act was amended in 1991. Thus, prior to the 1991 amendment, any provision in any collective bargaining agreement could supersede the requirements of the Act. In 1991, the Legislature chose to limit that ability. We agree with the parties, however, that the words of subsection (c) are susceptible to more than one meaning, and since there is no legislative history concerning the 1991 amendment, we must be guided in our interpretation by The Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991.

3. Based upon the issues raised on appeal, our review of the trial court's grant of summary judgment is limited to a determination of whether the court committed an error of law. *Bowles v. Southeastern Pennsylvania Transp. Auth.*, 135 Pa.Cmwlth. 534, 581 A.2d 700, 701–02 (1990).

4. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2702.

5. Section 1125 provides, in pertinent part, that "[p]rofessional employes shall be suspended under section 1124 (relating to causes for suspension) in inverse order of seniority...." 24 P.S. § 11–1125.

6. Pursuant to § 1124, a school board may suspend professional employees as a result of substantial decrease in pupil enrollment, alteration of educational programs because of substantial

decline in enrollment, consolidation of schools and the reorganization of school districts.

7. *See* Department of Education, Basic Education Circular 8–91, dated May 1, 1991. ("Does the teacher of a transferred class have a right to a suspension that will then trigger the right of an offer of employment from the receiving school entity? Section 1113 does not address a right to be suspended, however, a consensual suspension that results in the class—including the teacher—staying together is entirely consistent with Section 1113 and should be pursued whenever possible."). R. 177a.

8. This issue was raised by the Pittston Area Federation of Teachers in the *Luzerne Intermediate Unit* case (*supra*), but was not addressed by this court because no factual predicate existed to support the Federation's argument.

The Statutory Construction Act provides, in pertinent part:

In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:

(1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

(2) That the General Assembly intends the entire statute to be effective and certain....

1 Pa.C.S. § 1922. This court has determined that, by promulgating the Act, the Legislature intended to protect intermediate unit teachers at a time when it anticipated that many would be suspended. *Allegheny Intermediate Unit # 3 Educ. Ass'n v. North Hills Sch. Dist.*, 155 Pa.Cmwlth. 211, 624 A.2d 802, 805 (1993), *alloc. denied*, 538 Pa. 628, 646 A.2d 1181 (1994). Despite this overarching goal, we cannot attribute to the Legislature an intention in enacting the 1991 amendments that produces an absurd result. 1 Pa.C.S. § 1922; *Unionville–Chadds Ford Sch. Dist. v. Rotteveel*, 87 Pa.Cmwlth. 334, 487 A.2d 109, 113 (1985); *Summit Sch., Inc. v. Commonwealth of Pennsylvania, Dept. of Educ.*, 43 Pa.Cmwlth. 623, 402 A.2d 1142, 1145 (1979). It is clear that in 1991 the Legislature chose to add the date of the Act's initial passage (February 4, 1982) to subsection (c) to limit, to some extent, the ability of parties to supersede the requirements of the Act by the inclusion of contradictory provisions in CBAs. It is equally clear that *no* CBA in effect in 1982 remained in effect in 1991.[9] Thus, if the phrase "in effect on February 4, 1982" referred to CBAs themselves rather than to provisions within CBAs, subsection (c) would have been a nullity when it was enacted. We are not willing to attribute such an absurd result to the Legislature.

Accordingly, we reverse the order of the trial court entering summary judgment in favor of the Teachers.

---

9. The record on appeal contains an affidavit of David W. Devare, Ph.D., Director of Research for the Pennsylvania School Boards Association, which concludes with the assertion, which was not controverted by the Teachers, that there has

*ORDER*

**AND NOW**, this 26th day of November, 1997, the order of the Court of Common Pleas of Lackawanna County entering summary judgment in the above captioned matter is hereby reversed and this case is remanded for entry of judgment in favor of Scranton School District and Scranton Federation of Teachers.

Jurisdiction is relinquished.

never been a labor agreement in effect between teacher organizations and school districts or other public school entities in Pennsylvania for a term greater than six years. R. 180a.