The SUMMIT SCHOOL, INC., t/d/b/a Summit Academy, Petitioner

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF EDUCATION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 2014.
Decided Jan. 15, 2015.

James H. Norris, Jr., Pittsburgh, for petitioner.

Howard G. Hopkirk, Harrisburg, for respondent.

1. The Academy's Motion is filed pursuant to Rule 1035.2 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 1035.2, and the Department's Motion is filed pursuant to Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1532(b). We note that, because this matter is in our original jurisdiction, it is governed by the Rules of Appellate Procedure. However, the note to Rule 1532 specifically indicates that the relief sought in subsection (b) is "similar to the type of relief envisioned by the Pennsylvania Rules of Civil Procedure regarding ... summary

BEFORE: DAN PELLEGRINI, President Judge, and RENÉE COHN JUBELIRER, Judge, and MARY HANNAH LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

Before this Court, in our original jurisdiction, are the Motion for Summary Judgment filed by The Summit School, Inc., t/d/b/a Summit Academy (Academy) (Academy's Motion) and the Motion for Summary Relief filed by the Commonwealth of Pennsylvania, Department of Education (Department) (Department's Motion) in this declaratory judgment action (Amended Complaint) filed by the Academy.[1] The parties agree that there are no outstanding issues of material fact and argue that they are entitled to judgment as a matter of law on the proper interpretation and implementation of Section 2561(6) of the Public School Code of 1949 (School Code).[2] The question before this Court is whether, pursuant to Section 2561(6) of the School Code, the Department has to reimburse the Butler Area School District (District) in the amount of 150% of the District's tuition rate for the non-resident students the Academy educates on the District's behalf pursuant to a contract between the District and the Academy.

## I. Background

The Academy seeks a declaratory judgment under the Declaratory Judgments

judgment," Pa. R.A.P. 1532, Note, and we apply the same standard for motions filed pursuant to Rule 1532(b) as motions for summary judgment under Rule 1035.2, Pennsylvania Medical Society v. Department of Public Welfare, 614 Pa. 574, 39 A.3d 267, 276 & 277 n. 11 (2012). Thus, we will treat the Academy's Motion as having been filed pursuant to Rule 1532(b).

2. Act of March 10, 1949, P.L. 30, as amended, 24 P.S. § 25–2561(6).

Act[3] requiring the Department to reimburse the District, with which the Academy has a contract, the 150% tuition rate set forth in Section 2561(6) of the School Code. The Amended Complaint[4] avers the following. The Academy is a residential facility for adjudicated delinquents that is licensed by both the Department of Human Services (formerly the Department of Public Welfare) to provide care for up to 353 students, and by the Department as a private academic secondary school. (Amended Compl. ¶¶ 5–7.) Since 1997, the District has had a contract with the Academy to fulfill the District's "obligation to administer and deliver educational services to students at the Academy," pursuant to Section 1306(a) of the School Code[5] (Agreement). (Amended Compl. ¶¶ 8, 10.) The Agreement for the 1999–2000 school year is attached to the Amended Complaint as Exhibit A. According to a Department Basic Education Circular (BEC), which is attached to the Amended Complaint as Exhibit B, a host school district, like the District, is permitted to "contract with another educational entity to provide the education of students at the institution" and allows the host school district to finance that contract by "charging the ... resident school district [ (home school district) ] the tuition rate as determined by [Section 2561] of the School Code." (Amended Compl. ¶¶ 12, 14–15; BEC at 1.)

In 2001 and 2002, the District billed the home school districts, i.e., the districts where the Academy's students would have attended school had they not been adjudicated delinquent, the 150% rate. (Amended Compl. ¶ 19.) On behalf of the home school districts, the Department paid that rate to the District, which then remitted that money to the Academy less an administrative fee. (Amended Compl. ¶ 19.) The actual cost of educating the students at the Academy exceeds the 150% rate. (Amended Compl. ¶ 20.) Beginning in 2003, the Department refused to reimburse the District at the 150% rate, instead reimbursing it for 100% of the District's tuition rate. (Amended Compl. ¶ 21.) The Department challenged the 150% rate, and the Academy believes the Department also advised at least one home school district that it was paying too much. (Amended Compl. ¶ 23.) The Academy asserts that the Department is violating Section 2561(6) of the School Code by not paying the 150% rate, thereby forcing the Academy to bear additional expenses for educating the non-residential students that should be paid by the Department. (Amended Compl. ¶¶ 33, 35.)

3. 42 Pa.C.S. §§ 7531–7541.

4. The Academy filed its initial Complaint on January 14, 2011 and an Amended Complaint on March 11, 2011 in response to preliminary objections filed by the Department.

5. 24 P.S. § 13–1306(a). Specifically, Section 1306(a) provides, in relevant part:

(a) The board of school directors of any school district in which there is located any ... institution for the care or training of ... children, shall permit any children who are inmates of such homes, but not legal residents in such district, to attend the public schools in said district, either with or without charge for tuition, textbooks, or school supplies, as the directors of the district in which such institution is located may determine.... If the district ... in which the institution is located does not have facilities to accommodate the children in its schools ..., the board of directors shall so notify the [Secretary of Education (Secretary) ] not later than July 1. If the [Secretary], after investigation, finds that ... the school district ... can[not] accommodate the nonresident inmates of the institution during the ensuing school term, he shall direct the district ... to enter into an agreement with another school district ... to accept them on a tuition basis.
*Id.*

The Department filed Preliminary Objections (POs) to the Amended Complaint asserting that the Academy lacked standing, failed to join all of the home school districts as indispensable parties, and failed to state a claim upon which relief could be granted.[6] This Court overruled the Department's POs, and directed the Department to file an answer. *Summit School, Inc. v. Department of Education*, 2011 WL 10819518 (Pa.Cmwlth., No. 20 M.D. 2011, filed December 1, 2011). On January 13, 2012, the Department filed its Answer to the Complaint (Answer) indicating that the majority of the averments in the Amended Complaint were legal conclusions to which no response was needed. The Department admits that it paid the District the 150% rate for non-resident students, who are wards of the state and have no home school district, for the 1999–2000 and 2000–2001 school years, but believes that it overpaid in those years and, beginning in 2003, paid the District the 100% rate.[7] (Answer ¶¶ 19, 21.) The Department also raised New Matter, to which the Academy filed an Answer indicating that no response was required because the Department's allegations were conclusions of law.[8]

## II. Cross–Motions for Summary Relief

The Academy and the Department seek summary relief, agreeing that the resolution of their claims regarding the proper level of tuition reimbursement lies in the interpretation of Section 2561(6) of the School Code. Both assert that the plain language of this section supports their respective positions. Moreover, both contend that, if this Court finds the language to be ambiguous, the rules of statutory interpretation support their own reading of Section 2561(6) of the School Code.

Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure addresses applications for summary relief filed with this Court, and provides that: "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." Pa. R.A.P. 1532(b). We must determine, based on the undisputed facts, whether "either party has a clear right to the relief requested." *Bell Atlantic–Pennsylvania, Inc. v. Turnpike Commission*, 703 A.2d 589, 590 (Pa.Cmwlth.1997). The record, for purposes of the motion for summary relief, is the same as a record for

---

6. These were the Department's second set of POs, as it had filed POs to the Academy's initial Complaint.

7. The Department denies, *inter alia*, that it paid the District on behalf of the home school districts because those districts would have paid the District directly, and indicates that, because it did not have sufficient knowledge regarding the cost of educating the non-resident students at the Academy, it denies that the cost of educating the non-residential students exceeded the 150% tuition rate. (Answer ¶¶ 19, 20.)

8. On February 12, 2014, this Court advised the Academy and the Department that it "intend[ed] to terminate this case without further notice because the docket show[ed] no activity in the case for at least two years." (Notice

of Proposed Termination of Court Case (Notice), February 12, 2014.) The Notice informed the parties that the termination could be stopped "by filing a Statement of Intention to Proceed" before April 14, 2014. (Notice, February 12, 2014.) The Academy filed its Statement of Intention to Proceed on March 25, 2014. "[F]ollowing a status conference," the Department and the Academy "informed the Court there are only legal issues remaining in this action," and this Court directed that "any motion(s) for summary judgment and brief(s) in support ... shall be filed and served no later than July 15, 2014." (Order, April 30, 2014.) Both the Academy and the Department filed their Motions on July 15, 2014.

purposes of a motion for summary judgment. *Meggett v. Pennsylvania Department of Corrections,* 892 A.2d 872, 879 n. 13 (Pa.Cmwlth.2006). Rule 1035.1 of the Pennsylvania Rules of Civil Procedure provides that the record in a motion for summary judgment includes any: "(1) pleadings, (2) depositions, answers to interrogatories, admissions and affidavits, and (3) reports signed by an expert witness that would, if filed, comply with Rule 4003.5(a)(1), whether or not the reports have been produced in response to interrogatories." Pa. R.C.P. No. 1035.1. "The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Baker v. City of Philadelphia,* 145 Pa.Cmwlth. 421, 603 A.2d 686, 688 (1992).

However, before we address the meaning of Section 2561(6), we must first consider the Department's filing of two sworn Declarations, with attachments, from Department employees in support of the Department's Motion and the Academy's objections thereto. These employees were involved in reviewing tuition reimbursement requests, explained their procedures for doing so, and indicated that the Department's reimbursement to the District at the higher tuition rate was the result of an administrative error and contrary to the Department's policy. (Nelson Declaration ¶¶ 8–9; Rogers Declaration ¶ 8.) Based on these Declarations, the Department argues it may not be estopped from properly enforcing or administering the School Code because its employees failed to properly do so in the past. *See Commonwealth v. Western Maryland R.R. Co.,* 377 Pa. 312, 105 A.2d 336, 340–41 (1954) ("It is a fundamental legal principle that a State or other sovereignty cannot be estopped by any acts or conduct of its officers or agents in the performance of a governmental as distinguished from a proprietary function."); *Department of Environmental Resources v. Philadelphia Suburban Water Company,* 135 Pa.Cmwlth. 283, 581 A.2d 984, 990 (1990) ("[A]n agency cannot be estopped from performing its statutory duties."). The Academy asks that these Declarations and attachments be stricken because these documents are not in the record, which is closed, and the Department improperly relies upon them to support its arguments.

After reviewing the Declarations and attachments, we note that they simply reiterate the Department's arguments regarding its policy toward tuition reimbursement under Section 2561(6). The relevant information contained within the Declarations and attachments that the Department seeks to rely upon is not factual in nature. Rather, the statements therein relate to the legal question of the Department's interpretation of Section 2561(6), which the Department has already set forth in its Answer, the Department's Motion, and its brief to this Court. Thus, the Declarations and attachments do not provide anything additional for this Court to consider in determining whether to grant summary relief. We now turn to the main question before this Court, ascertaining the meaning of Section 2561(6) of the School Code.

■ The touchstone of interpreting statutory language is to ascertain and effectuate the intent of the legislature. Section 1921 of the Statutory Construction Act of 1972 (SCA), 1 Pa.C.S. § 1921(a); *Colville v. Allegheny County Retirement Board,* 592 Pa. 433, 926 A.2d 424, 430–31 (2007). A guiding principle of statutory construction is that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.

C.S. § 1921(b). "Words and phrases shall be construed … according to their common and approved usage." Section 1903(a) of the SCA, 1 Pa.C.S. § 1903(a). Only when the words of a statute are unclear or ambiguous will courts engage in statutory construction to determine the intent of the legislature. 1 Pa.C.S. § 1921(c); *Zane v. Friends Hospital,* 575 Pa. 236, 836 A.2d 25, 31 (2003). "A statute is ambiguous when there are at least two reasonable interpretations of the text under review." *Warrantech Consumer Products Services, Inc. v. Reliance Insurance Company in Liquidation,* —— Pa. ——, 96 A.3d 346, 354–55 (2014). Where the words of the statute are not explicit, the legislature's intent may be ascertained by considering, *inter alia,* "[t]he consequences of a particular interpretation." 1 Pa.C.S. § 1921(c)(6). It is presumed that the legislature "does not intend a result that is absurd, impossible of execution or unreasonable." Section 1922(1) of the SCA, 1 Pa.C.S. § 1922(1). Thus, "[s]tatutes should receive a sensible construction and should be construed[,] if possible[,] so that absurdity and mischief may be avoided." *Capital Academy Charter School v. Harrisburg School District,* 934 A.2d 189, 193 (Pa.Cmwlth.2007).

■ Pursuant to Section 1306(a) of the School Code, the District is required to provide non-resident adjudicated youth located within its boundaries with an education. 24 P.S. § 13–1306(a) (stating that host school districts are required to allow the adjudicated youths "to attend the public schools in said district"). Section 1308(c) provides that the Department shall

pay the tuition of adjudicated youth, who are provided an education from the host school district, "[i]f the Secretary of Education [ (Secretary) ] decides that the legal residence of any of the said inmates is in Pennsylvania, but cannot be fixed in a particular district." [9] 24 P.S. § 13–1308(c); *see also* Section 1309(b) of the School Code, 24 P.S. § 13–1309(b) (stating that "[f]or students who the Secretary … has determined are legal residents of Pennsylvania without fixed districts of residence, the tuition herein provided for shall be paid annually by the Secretary").

Section 2561 of the School Code establishes how "[a] school district … receiving … pupils who are residents of another school district … shall compute the tuition charges" for that student. 24 P.S. § 25–2561. This section first describes how the host school district should calculate its own tuition rate by type of school services (elementary, secondary, vocational), when to calculate that rate, and when to charge the home school district or the Department for the education of the non-resident students. 24 P.S. § 25–2561(1)–(5). Section 2561(6) describes the charge for "Institutional Tuition" and provides that

[w]hen the public school district administers and delivers the educational services required by this act to a child referred to an institution … at the institution itself, the tuition to be charged to the district of residence of such child shall be one and one-half times the amount determined in accordance with clauses (1) through (5), but not to exceed

---

9. Section 1308(a) provides that the tuition of the adjudicated youth "shall be paid by the district of residence of the inmates upon receipt of a bill from the [host school] district." 24 P.S. § 13–1308(a). After the Academy filed its Amended Complaint in 2011, the General Assembly amended Section 1308 to authorize, effective August 29, 2012, a third party that contracts with a host school district "to provide educational services to children who are inmates of the institution" to "seek payment of tuition directly from the district of residence." 24 P.S. § 13–1308(b).

the actual cost of the educational services provided to such child.

24 P.S. § 25–2561(6).

There is no dispute that the non-resident students here are receiving educational services "at the institution itself." 24 P.S. § 25–2561(6). The phrase at issue is "[w]hen the *public school district administers and delivers* the educational services." *Id.* (emphasis added). The Department asserts that this phrase requires the host school district to administer and deliver the educational services *itself,* for example, by using its own teachers and resources, and that the Academy's interpretation omits the term "delivers" from Section 2561(6). By contrast, the Academy asserts that the District is both administering and delivering the required educational services through its contract with the Academy, which is delivering the educational services on the District's behalf. The Academy argues that the Department's interpretation adds the term "itself" to this phrase and no such requirement is present in the language of Section 2561(6).

The Department asks that we use dictionary definitions of the terms "administer" and "deliver" since they are not defined in the statute. There are multiple definitions of both words—"administer" can be defined as "to manage the affairs of" or "to direct . . . the execution, use, or conduct of." Webster's Third New International Dictionary 27 (2002). The term "deliver" can be defined as to "give, transfer . . . to make known to another . . . communicate . . . to send." *Id.* at 597. Under these definitions, both interpretations are plausible—that the District must itself manage and give the education, through its own teachers, or that the District is directing the giving of the education through its contract with the Academy.

The language of Section 2561(6), thus, is ambiguous because there "are at least two reasonable interpretations of the text under review," *Warrantech Consumer Products Services, Inc.,* 96 A.3d at 354–55, which requires this Court to engage in statutory construction to ascertain the legislature's intent, 1 Pa.C.S. § 1921(c); *Zane,* 836 A.2d at 31. One aid in construing statutory language is an administrative agency's interpretation of the language of the statute it is charged with administering, which will be given deference unless the interpretation is clearly erroneous, *Department of Education v. Empowerment Board of Control of Chester–Upland School District,* 595 Pa. 426, 938 A.2d 1000, 1010 (2007), or "unwise or violative of legislative intent," *Luzerne Intermediate Unit No. 18 Education Association v. Pittston Area School District,* 168 Pa. Cmwlth. 304, 650 A.2d 1112, 1117 (1994).

The BEC recognizes that: host school districts have an obligation, under Section 1306, to allow, *inter alia,* non-resident adjudicated youth to attend their schools; this may not be appropriate in some circumstances; and this obligation can be met by creating an approved "educational or alternative education program at the institution" or entering into a "contract with another educational entity, such as an Intermediate Unit, to provide an educational program for the students in the institution." (BEC at 1.) In the section titled "Financing Non–Resident Students Living in Children's Institutions," the BEC advises that "[h]ost school districts will finance the provision of the educational program for the students in children's institutions through Section 1306," which "allows the host school district to charge the school district where the student's parents live, or [home] school district, [or the Department for wards of the state], the host [school] district's tuition rate, as determined by Section 2561, for the education of

these students." (BEC at 1.) The BEC does not expressly indicate which provision in 2561 is applicable and, thus, offers little assistance in construing Section 2561(6).

Two other principles of statutory interpretation may assist in determining which interpretation of Section 2561(6) more accurately reflects the General Assembly's intent—"[t]he consequences of a particular interpretation," 1 Pa.C.S. § 1921(c)(6), and that the legislature "does not intend a result that is absurd, impossible of execution or unreasonable," 1 Pa.C.S. § 1922(1).

The Department asserts that its interpretation reflects the legislature's "recogni[tion] that the host [school] district may incur additional costs above its normal tuition rate when it provides educational services to students at a separate location not owned by the school district." (Department's Br. in Support at 14.) The Academy contends that, in approving the higher reimbursement rate where the delinquent students are educated at the institution itself, the legislature "recognized that the host [school] districts are faced with the added burden of arranging for educational services for the delinquent students at the facilities in their district." (Academy's Reply Br. at 5.)

We conclude that the Academy's interpretation is more consistent with the legislature's intent. As pointed out by the Academy, the Department's interpretation requires this Court to add the word "itself" to Section 2561(6). However, we have no authority to add or insert language into a statute, *Burke ex rel. Burke v. Independence Blue Cross*, —— Pa. ——, 103 A.3d 1267, 1273–74 (2014), and " 'it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include,' " *Shafer Electric & Construction v. Mantia*, —— Pa. ——, 96 A.3d 989, 994 (2014) (quoting *Commonwealth v. Rieck Investment Corporation*,

419 Pa. 52, 213 A.2d 277, 282 (1965)). By contrast, the Academy's reading focuses, as does the language of Section 2561(6), on the location of *where* the adjudicated youth are educated. Section 2561(6) states that, if the youth are educated "*at the institution itself,* the tuition to be charged ... shall be" the 150% rate. 24 P.S. § 25–2561(6) (emphasis added). This interpretation recognizes that providing educational services to these troubled students *at* an institution, where a school district does not do so at its own facilities, is more costly because it requires additional services to educate these particular students, regardless of who is providing those educational services. A consequence of adopting the Department's interpretation would result in the application of two different reimbursement rates for the same educational services, based *solely* on the identity of the entity providing those services. We conclude that this result would be unreasonable and absurd and, therefore, must not have been the legislature's intent when it enacted Section 2561(6). 1 Pa.C.S. § 1922(1).

### III. Conclusion

Accordingly, where a non-resident student who has been determined to be a ward of the state is educated at the institution in which the student is housed, pursuant to Section 2561(6) of the School Code, the Department shall pay tuition in the amount of "one and one-half times the amount determined in accordance with clauses (1) through (5), but not to exceed the actual cost of the educational services provided to such child," 24 P.S. § 25–2561(6), regardless of whether those services are provided by the host school district itself or contractually by a third party. For the foregoing reasons, we deny the Department's Motion, grant the Acad-

emy's Motion, and enter judgment in the Academy's favor.

## ORDER

NOW, January 15, 2015, the Motion for Summary Relief filed by the Commonwealth of Pennsylvania, Department of Education, is hereby **DENIED.** The Motion for Summary Judgment filed by The Summit School, Inc., t/d/b/a Summit Academy (Academy) is hereby **GRANTED,** and judgment is entered in favor of the Academy.