IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tara Kent, PH.D,                  :
            Petitioner           :
                          :
           v.                    :
                          :
Cheyney University of Pennsylvania    :
and Pennsylvania State System of      :
Higher Education,                  :     No. 349 M.D. 2019
           Respondents       :     Argued:  November 14, 2022


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED:  December 15, 2022


         Respondents, Cheyney University of Pennsylvania (Cheyney) and the Pennsylvania State System of Higher Education (PASSHE)[1] (jointly, Respondents) seek summary relief in the form of a motion for summary judgment requesting that this Court dismiss the petition for review[2] filed by Tara Kent, Ph.D. (Dr. Kent).  For the reasons set forth below, we deny application for summary relief as to Cheyney and grant it as to PASSHE.

---

[1] Cheyney is a PASSHE member university.  Section 2002-A of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, added by the Act of November 12, 1982, P.L. 660, 24 P.S. § 20-2002-A.

[2] Kent titled her original pleading as Complaint – Civil Action.  For clarity, it is designated here as a petition for review.

# I. Background

Dr. Kent is a former employee of Cheyney, where she served in various positions beginning in 2002; she was Cheyney's Provost from spring 2017 until the time of her termination in September 2018. Pet. for Rev., ¶ 1 & Ex. A. Dr. Kent also served for 10 years as Dean of the Keystone Honors Academy program at Cheyney (Program). *Id.* ¶ 17.

Dr. Kent alleges that in the summer of 2018, she met with Cheyney's president, Aaron Walton (President Walton), to express concerns about what she perceived as misallocations of Program funds and improper lowering of Program admission standards. Pet. for Rev., ¶¶ 32-44. However, she avers that President Walton "conveyed no interest in considering – much less addressing – Dr. Kent's serious concerns." *Id.*, ¶ 44. Instead, "[w]hen confronted by Dr. Kent with evidence of the misappropriation of state funding, [President] Walton became irate, accused Dr. Kent of being an 'obstructionist,' stated that he did 'not have time for this,' and demanded that Dr. Kent keep her concerns to herself." *Id.*, ¶ 40. Further objections by Dr. Kent to what she believed were improper practices were also rebuffed. *See id.*, ¶¶ 45-47.

On September 7 and 10, 2018, Dr. Kent disclosed her concerns to PASSHE's chief legal counsel, vice chancellor, and other senior representatives. Pet. for Rev., ¶¶ 48-49. On September 19, 2018, at a meeting with President Walton and administrative personnel from Cheyney and PASSHE regarding Cheyney's faculty union, Dr. Kent, who believed President Walton had failed to disclose a $100,000 no-bid contract to the union, "reminded [President] Walton and the senior PASSHE representatives present at the meeting that any lack of transparency with

respect to Cheyney contracts would be a violation of Cheyney and Pennsylvania procurement requirements." *Id.*, ¶ 53.

The next day, in the presence of "a senior PASSHE representative" not identified by name in the petition for review,[3] and without issuing a prior warning or unsatisfactory performance review, President Walton handed Dr. Kent a termination letter. Pet. for Rev., ¶¶ 54 & 56. Dr. Kent "believe[s] and therefore aver[s] that [President] Walton's decision to terminate Dr. Kent was rendered only after consultation with, and with the approval of, senior PASSHE representatives." *Id.*, ¶ 55.

Dr. Kent filed a petition for review in this Court asserting a claim under Section 3(a) of the Whistleblower Law,[4] which provides:

> **Persons not to be discharged.--**No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

43 P.S. § 1423(a). Dr. Kent maintains that Respondents violated the Whistleblower Law by terminating her in retaliation for her good faith reports to President Walton and PASSHE regarding alleged "significant waste and wrongdoing" at Cheyney. Pet. for Rev., ¶¶ 61-63.

---

[3] In her brief in opposition to Respondents' application for summary relief, Dr. Kent avers that the official was PASSHE's Assistant Vice Chancellor for Employee Labor Relations. Pet'r's Br. at 28.

[4] Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§ 1421-1428.

Respondents deny Dr. Kent's claims. Concerning the claim against Cheyney, Respondents contend that Dr. Kent's employment was not terminated because of her reports alleging fiscal malfeasance, but because President Walton "lost faith" in her after Dr. Kent criticized his efforts to boost Cheyney's dwindling enrollment by shifting Program scholarship awards to the enrollment department and hiring a new director of enrollment management; and after Dr. Kent "withheld or delayed Provost-level approval of funding for marketing materials" that were "critical to Cheyney's enrollment efforts." Application for Summary Relief, ¶¶ 20-24.

Respondents claim Dr. Kent cannot establish a *prima facie* case of retaliation as required by the Whistleblower Law because the nature of her complaints did not constitute a report of waste or wrongdoing within the meaning of the Whistleblower Law, she did not make her report to an employer or appropriate authority within the meaning of the Whistleblower Law, and she failed to point to evidence of a causal connection between her alleged report and President Walton's decision to terminate her. Respondents' Br. at 19-25. Further, Respondents argue that even if Kent could establish a *prima facie* case of retaliation, the record establishes that Kent's termination was the result of legitimate, nondiscriminatory reasons related to President Walton's loss of faith in Dr. Kent. *Id.* at 25-26. Respondents also contend the record is devoid of evidence that President Walton's reason for terminating Dr. Kent was pretextual. *Id.* at 26-27.

Concerning Dr. Kent's claim against PASSHE, Respondents assert that "the Provost is appointed by and reports to the Cheyney President and the Provost serves at the pleasure of the President." Answer to Pet. for Rev., ¶ 19; *see also id.*, ¶¶ 24-25 (stating that Dr. Kent was appointed Provost by, and reported to, President

4

Walton); Application for Summary Relief, ¶ 25 (averring that "[p]ursuant to the terms of her appointment letter, [Dr. Kent] served at the pleasure of Cheyney's President"). Respondents aver that President Walton "had the sole authority over the Provost's authority and made the decision to terminate [Dr. Kent]," although he "did have contact with PASSHE representatives regarding the logistics of [Dr. Kent's] termination, prior to its occurrence." Answer to Pet. for Rev., ¶ 55. Thus, Respondents assert that PASSHE had no part in terminating Dr. Kent's employment, as "the record establishes that the decision to terminate [Dr. Kent] was made [by] Cheyney's President, and not any officials of [PASSHE]." Application for Summary Relief, ¶ 29; *see also* Respondents' Br. at 25. PASSHE contends it cannot, as a matter of law, be liable to Kent for a violation of the Whistleblower Law.

Following discovery, Respondents filed an application for summary relief (Application). After briefing and oral argument, the Application is now ripe for disposition.

## II. Discussion
### A. Applicable Legal Principles

Pennsylvania Rule of Appellate Procedure 1532(b) provides that, "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." Pa.R.A.P. 1532(b); *Summit Sch., Inc. v. Dep't of Educ.*, 108 A.3d 192, 195 (Pa. Cmwlth. 2015). In deciding a request for summary relief, "this [C]ourt must determine whether it is clear from the undisputed facts that either party has a clear right to the relief requested." *Bell Atl.-Pa., Inc. v. Tpk. Comm'n*, 703 A.2d 589, 590 (Pa. Cmwlth. 1997), *aff'd*, 713 A.2d 96 (Pa. 1998). "The record, for purposes

5

of the motion for summary relief, is the same as a record for purposes of a motion for summary judgment." *Summit Sch.*, 108 A.3d at 195-96. Pursuant to Pennsylvania Rule of Civil Procedure 1035.1, the record in a motion for summary judgment includes any: "(1) pleadings, (2) depositions, answers to interrogatories, admissions and affidavits, and (3) reports signed by an expert witness that would, if filed, comply with [Pa.R.Civ.P. 4003.5(a)(1)], whether or not the reports have been produced in response to interrogatories." Pa.R.Civ.P. 1035.1.

However, "[i]t is well established that testimonial affidavits or deposition testimony alone, even if not contradicted, is insufficient to establish the absence of a genuine issue of material fact because the credibility of the testimony is a matter for the factfinder." *Dep't of Transp. v. UTP Corp.*, 847 A.2d 801, 806 (Pa. Cmwlth. 2004); *see also Borough of Nanty-Glo v. Am. Sur. Co. of N.Y.*, 163 A. 523 (Pa. 1932); Pa.R.Civ.P. 1035.5, Note. "In ruling on applications for summary relief, [this Court] must view the evidence of record in the light most favorable to the non-moving party and enter judgment only if there is no genuine issue as to any material facts and the right to judgment is clear as a matter of law." *Eleven Eleven Pa., LLC v. State Bd. of Cosmetology*, 169 A.3d 141, 145 (Pa. Cmwlth. 2017) (internal brackets omitted).

To prevail on a Whistleblower Law claim, a petitioner must prove that prior to the alleged retaliation, she reported or was about to report, in good faith, an instance of wrongdoing. Section 4(a) of the Whistleblower Law, 43 P.S. § 1424(a). However, the petitioner must do more than merely demonstrate that she was terminated sometime after making a report. *See Golaschevsky v. Dep't of Env't Prot.*, 720 A.2d 757, 759 (Pa. 1998). Instead, "[t]he causal connection that the Whistleblower Law requires must be demonstrated by concrete facts or surrounding

6

circumstances that the report of wrongdoing or waste led to the [petitioner's] dismissal, such as that there was specific direction or information received not to file the report or that there would be adverse consequences because the report was filed." *Evans v. Thomas Jefferson Univ.*, 81 A.3d 1062, 1070 (Pa. Cmwlth. 2013) (quoting *Golaschevsky*, 720 A.2d at 759) (internal quotations omitted). "The Whistleblower Law is not designed to provide insurance against discharge or discipline for an employee who informs on every peccadillo of his fellow employees." *Id.* at 1070 (internal quotations omitted). If a petitioner proves a causal connection between the report of wrongdoing and her eventual termination, then the burden shifts to the respondents to show that their actions were lawful. *O'Rourke v. Dep't of Corr.*, 778 A.2d 1194, 1200 (Pa. 2001); *see also* 43 P.S. § 1424(c). "[A]n employer should not incur liability for independently justified adverse personnel action simply because animus may exist based upon prior reports of wrongdoing." *O'Rourke*, 778 A.2d at 1204.

## B. Cheyney's Application for Summary Relief

Respondents contend that Dr. Kent has not presented a *prima facie* violation of the Whistleblower Law. Respondents observe that Section 2 of the Whistleblower Law provides that to be protected by that law, a report of "wrongdoing" must relate to a "violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." Respondents' Br. at 20 (quoting 43 P.S. § 1422) (additional quotation marks omitted). Here, according to Respondents, Dr. Kent merely reported "regarding a handful of students who she believed fell slightly

7

short of the minimum eligibility standards set by Cheyney's internal policy and were nonetheless offered [Program] scholarships. This is not significant enough to amount to wrongdoing or waste under the Whistleblower Law." Respondents' Br. at 19-20.

Further, Respondents contend that, even if Dr. Kent could establish a *prima facie* case, President Walton had a legitimate, nondiscriminatory reason to terminate Dr. Kent because she "nearly caused a serious disruption in Cheyney's critical enrollment efforts due to her failure to approve funding that the President had asked her to approve." Respondents' Br. at 25. Respondents similarly argue that no evidence exists to suggest Dr. Kent's termination was pretextual. In support of this argument, they offer a bare assertion that "[t]he evidence instead establishes Dr. Kent's 'whistleblowing' campaign was nothing more than a focused effort to undo any changes to the [Program scholarship] process, returning her to total control over that [P]rogram, with little to no consideration of the dire situation the University as a whole faced." *Id.* at 26.

Dr. Kent counters that issues of material fact remain for determination. Regarding the seriousness of the alleged wrongdoing she reported, Dr. Kent asserts that she gave President Walton information about over 30 students who had been improperly awarded restricted scholarships by the new director of enrollment management who was hired by President Walton in 2018. Pet'r's Br. at 22. Dr. Kent alleges that at least 18 of those students improperly received scholarships "without satisfying the more rigorous eligibility requirements established for [the P]rogram." *Id.* (citing Pet'r's Ex. J, Interoffice Memorandum re: Scholarship Policies). Moreover, Dr. Kent avers that the improperly awarded scholarships resulted in wrongful use of over $375,000 annually and would have cost over $1.5

8

million over four years. *Id.* at 24. In addition to the monetary value of the Program scholarships at issue, Dr. Kent asserts that "[b]oth the public and Cheyney have an interest in ensuring that public scholarship monies are awarded based on known and established criteria rather than the whim of a newly appointed administrator." *Id.* at 26-27.

Regarding the alleged causal connection between Dr. Kent's report of alleged wrongdoing and President Walton's termination of her employment, Dr. Kent argues that she shared her concerns about wrongdoing with senior PASSHE officials, against President Walton's express directive not to tell anyone else. Pet'r's Br. at 22. Prior to that time, "Dr. Kent had consistently received excellent performance reviews, had been promoted up through the ranks, and had been promoted by President Walton himself to be Provost, Cheyney's chief academic officer." *Id.* However, once Dr. Kent reported the alleged misuse of restricted Program scholarship money for improper scholarship awards, "President Walton became irate [and] accused Dr. Kent of being an obstructionist . . . ." *Id.* Dr. Kent suggests that the facts and timing surrounding her termination, just one week after she provided President Walton with a memorandum from the Cheyney Honors Council regarding the misuse of restricted scholarship funds and requested a meeting to discuss her proposed recommendations, establish a causal connection between her allegations of wrongdoing and the termination of her employment. *See id.* at 28.

Finally, Dr. Kent contends she has raised a question of fact regarding whether her employment was terminated pretextually. Notably, Dr. Kent avers that at the time of her termination, in response to her repeated questions about why she was being fired, President Walton would say only, "You're an at-will employee and that's within my authority." Pet'r's Br. at 29 (first citing Pet'r's Ex. A, Kent Dep.

9

at 237; and then citing Pet'r's Ex. C, Kent aff., ¶ 20). According to Dr. Kent, Respondents' after-the-fact allegations that she failed to approve funding for recruitment costs as ordered by President Walton do not provide a legitimate, nondiscriminatory reason for her termination. Pet'r's Br. at 30. Dr. Kent avers that both she and another Cheyney administrator legitimately questioned the propriety of using Program funds for general recruitment costs such as marketing materials, as well as the exorbitant amounts being spent for such purposes. *Id.* (citing Pet'r's Ex. F, Blackman dep. at 20-30). Nevertheless, Dr. Kent agreed to follow the President's directive, but then learned that Cheyney's Vice President of Finance had already approved the authorization of funds. Pet'r's Br. at 31.

In *Vance v. Cheyney University of Pennsylvania* (Pa. Cmwlth., No. 210 M.D. 2017, filed July 8, 2021),[5] this Court considered a similar case involving the termination of another Cheyney employee. We denied an application for summary relief regarding a similar whistleblower claim by another terminated Cheyney employee who alleged that she suffered retaliation after reporting fiscal malfeasance involving scholarship funds. *See id.*, slip op. at 8-9. We concluded that questions of fact remained, including "the conduct and timing surrounding [the petitioner's] reporting of missing restricted scholarship funds, [the petitioner's] treatment by [Cheyney] thereafter, and the circumstances, factors, and decision-making process surrounding the elimination of [the petitioner's] position with [Cheyney], as well as the parties' competing interpretations thereof." *Id.*

Like *Vance*, this case presents a situation where, despite Respondents' insistence to the contrary, necessary findings of fact remain to be made. Those

---

[5] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), unreported panel decisions of this Court, issued after January 15, 2008, may be cited for their persuasive value. 210 Pa. Code § 69.414(a).

10

findings include, *inter alia*, whether Dr. Kent's report alleging over 30 improperly awarded scholarships was true, and if so, whether it asserted wrongdoing or waste sufficient to constitute a report subject to the protection of the Whistleblower Law. Factual findings are also required concerning whether President Walton directed Dr. Kent to tell no one else of her concerns about improper Program scholarship awards and, if he did issue such a directive, whether a threat of retaliation could properly be inferred from his having done so. In addition, questions of fact remain concerning whether Dr. Kent's alleged failure to authorize an expenditure ordered by President Walton constituted a legitimate, nondiscriminatory reason for her termination. As such, factual disputes requiring credibility determinations and a need for formal findings of fact remain that prevent the Court from granting the application for summary relief as to Cheyney at this time. Accordingly, we deny the application for summary relief insofar as it relates to Cheyney. *See Sabater v. Pa. Ins. Dep't* (Pa. Cmwlth., No. 637 M.D. 2014, filed Jan. 3, 2019), slip op. at 7 (denying an application for summary relief regarding whistleblower claim where necessary findings of fact remained to be made by a fact-finder).

### C. PASSHE's Application for Summary Relief

As set forth above, Section 3(a) of the Whistleblower Law provides that an "*employer*" may not "discharge, threaten or otherwise discriminate or retaliate against an *employee*" based on the employee's good faith report of wrongdoing or waste. 43 P.S. § 1423(a) (emphasis added). PASSHE separately contends that it cannot be liable to Dr. Kent as a matter of law, because it was not Dr. Kent's employer and did not have authority to terminate her or otherwise take any action against her in retaliation for her reports of alleged malfeasance by Cheyney

11

personnel regarding Program scholarship funds. *See* Application for Summary Relief, ¶ 29; Respondents' Br. at 25. We agree that neither the School Code nor the record supports any claim against PASSHE.

Section 2006-A[6] of the School Code, which sets forth the powers and duties of PASSHE's Board of Governors, authorizes PASSHE to appoint presidents of member universities, but confers no authority to hire or fire other university employees. *See generally* 24 P.S. § 20-2006-A. Thus, PASSHE was not statutorily authorized to terminate Dr. Kent's employment. Rather, Section 2010-A(1)[7] of the School Code confers that power solely upon the presidents of PASSHE member universities, by authorizing university presidents "to appoint such employes, professional and noninstructional, graduate assistants, etc. as necessary . . . ." 24 P.S. § 20-2010-A(1). Indeed, Dr. Kent expressly acknowledged that she served at the pleasure of President Walton and that he had the authority to terminate her employment unilaterally. Kent Dep. at 20-21.

Dr. Kent asserts that she received her paychecks and benefits through PASSHE. Pet'r's Br. at 3 n.2 (citing Pet'r's Ex. C, Kent aff., ¶ 1).[8] However, PASSHE observes there is no dispute that Dr. Kent was an employee of Cheyney. Respondents' Reply Br. at 4 (citing Resp'ts' Ex. A, Kent Dep. at 13-14). PASSHE also points to Dr. Kent's 2017 appointment as Cheney's Provost, which was made by Cheyney's President on Cheyney letterhead. Respondents' Reply Br. at 4 (first citing Resp'ts' Ex. A, Kent Dep. at 14-15 & 17; and then citing Respondents' Reply

---

[6] Added by the Act of November 12, 1982, P.L. 660.

[7] *See* Note 6, *infra*.

[8] At pages 28-29 of her brief, Dr. Kent also cites Appendix B to her opposition to the application for summary relief, President Walton's deposition at 8-9. However, our review of the cited pages did not reveal any reference to Dr. Kent's paychecks or benefits.

Br., Ex. T). The termination letter President Walton handed Dr. Kent on September 20, 2018 was likewise on Cheyney letterhead and was signed by President Walton; it stated "you serve *at the pleasure of the President of Cheyney University* of Pennsylvania" and "[t]his letter serves as official notice that your employment *with the University* will be terminated effective September 28, 2018." Respondents' Reply Br. at 4-5 (emphasis added) (first citing Resp'ts' Ex. A, Kent Dep. at 236-37; and then quoting additional Respondents' Reply Br., Ex. U) (additional quotation marks omitted)).

Moreover, although Cheyney is a member university of PASSHE, Dr. Kent failed to point to any evidence that PASSHE exerted control over the termination decision or was in a relationship with Cheyney that could give rise to vicarious liability on the part of PASSHE for conduct of Cheyney or its president. The most Dr. Kent could assert was that a PASSHE representative was present in the room when President Walton handed Dr. Kent a termination letter. Pet. for Rev., ¶¶ 54 & 56. That is insufficient to demonstrate any control by PASSHE over President Walton's decision to terminate Dr. Kent.

For these reasons, we agree with PASSHE that it is entitled to summary relief. We therefore grant the application for summary relief as it relates to PASSHE, and we dismiss PASSHE as a party to this action.

13

### III. Conclusion

Based on the foregoing discussion, we deny Respondents' application for summary relief as to Cheyney, grant the application for summary relief as to PASSHE, and dismiss PASSHE from this action.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tara Kent, PH.D,       :
    Petitioner      :
            :
    v.         :
            :
            :
Cheyney University of Pennsylvania :
and Pennsylvania State System of  :
Higher Education,      :  No. 349 M.D. 2019
    Respondents    :

## O R D E R

AND NOW, this 15th day of December, 2022, Respondents' application for summary relief is DENIED insofar as it relates to Respondent Cheyney University of Pennsylvania. The application for summary relief is GRANTED insofar as it relates to Respondent Pennsylvania State System of Higher Education (PASSHE), and PASSHE is DISMISSED as a party to this action.

_____
CHRISTINE FIZZANO CANNON, Judge